Argued at Pendleton May 4; affirmed June 14, 1938

ALBRECHT *v.* SAFEWAY STORES, INC., ET AL.

(80 P. (2d) 62)

In Banc.

*James T. Donald,* of Baker (Jay Bowerman and Hallock, Donald & Banta, all of Baker, on the brief), for appellants.

*A. S. Grant,* of Baker (Heilner, Smith, Grant & Fuchs, of Baker, on the brief), for respondent Henry Albrecht.

*R. J. Green,* of La Grande (Green & Hess, of La Grande, on the brief), for respondents George Velvin and Thomas Velvin.

BELT, J. This is an action to recover damages for personal injuries sustained in an automobile accident

which occurred on the John Day highway about 17 miles north of the city of Burns in Harney county, Oregon. Verdict and judgment were had in favor of the plaintiff against the defendants H. M. Howard and the Safeway Stores, Incorporated, in the sum of $29,000. No damages were found against the defendants George Velvin and Thomas Velvin.

H. M. Howard is the district manager of the Safeway Stores and has general supervision of stores owned and operated by his employer in five counties in eastern Oregon, including Harney county. Among other things it is his duty, as district manager, to inspect these various stores and to haul merchandise from one store to another. Howard used his own automobile in making these trips of inspection and was paid by his employer four cents a mile to cover traveling expenses. While returning from Burns to Baker on one of these monthly inspection trips, a head-on collision occurred between the Oldsmobile driven by Howard and a Ford owned by defendant George Velvin and operated by his son, Thomas Velvin, who was transporting some high school boys to Burns to play football. The plaintiff, who was riding with Howard, was seriously and permanently injured as a result of the accident.

One of the principal contentions of appellants is that the trial court should have declared as a matter of law that the plaintiff, while being so transported, was a guest and that it was error to submit to the jury the question of the status of the plaintiff. Such assignment of error requires a more detailed statement of the facts.

Plaintiff testified that on the morning of November 15, 1935, his brother-in-law, Howard, telephoned "and wanted me to go over to Burns with him" in his auto-

mobile to inspect the store at that place, but "I told him I didn't want to go. I couldn't go." Howard, however, came down to the plaintiff's home and insisted upon his going. While there, Howard said that "he wanted me to go along—he might need some help, and that his wife didn't want him to make it alone, and he wanted me to go along and help drive."

This standard, oiled macadamized highway traverses a mountainous section of the state, with many blind hairpin curves. At the time in question the road was extremely slippery as it was covered with a thin coating of ice and snow. The distance from Baker to Burns is 167 miles. Plaintiff received no compensation for making the trip and the expenses thereof, including hotel room and meals, were paid by Howard. Plaintiff was not an employee of the Safeway Stores but was a railway mail clerk and, under the rules of the government department, was prohibited from engaging in other employment. He was enabled to go with Howard by reason of a "five-day layoff". While Howard slept, he drove about 40 miles of the distance en route to Burns. Before returning from Burns to Baker, plaintiff assisted in loading several ten-pound sacks of salt in Howard's automobile to be transported to the store at Baker.

In the light of the above facts can it be said, as a matter of law, that plaintiff was merely a guest? What was the motivating influence in his going? Did he go for his own social pleasure or business, or was it to confer some substantial benefit upon Howard in the furtherance of the Safeway Stores' business? If different reasonable inferences can be drawn from the evidence concerning the status of the plaintiff, the question was one for the jury. If the only reasonable deduction

is that plaintiff was merely a guest, the court should have so decided as a matter of law.

Relative to this phase of the case the court instructed the jury that if it found plaintiff was a guest there could be no recovery against the Safeway Stores. The court also instructed that whether the plaintiff was a guest or a passenger at the time of this accident depended upon whether ''he went merely for pleasure or for company for Howard or whether he went for the purpose of assisting Howard in the performance of some service.''

The guest statute of this state (§ 55-1209, Oregon Code 1930) provides:

''No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator or caused by his gross negligence or intoxication or his reckless disregard of the rights of others.''

██ In construing the above statute it is well to have in mind the evils which brought about its enactment. The legislature undoubtedly appreciated the apparent injustice of holding an owner or operator of an automobile liable in damages for failure to exercise ordinary care to one riding merely as a guest. It was not considered just that one who accepts the kindness or hospitality of an automobile owner or operator, in extending an invitation to ride, should recover damages for personal injuries unless the same resulted from gross negligence, intoxication, or an intentional wrong. The statute was designed to relieve the harshness of the common law rule which required the exercise of ordinary care even to a recipient of the driver's kindness and hospitality.

In the ordinary acceptation. of the term, a "guest", according to Webster's New International Dictionary (2d Ed.), is "a person entertained in one's house or at one's table; a visitor entertained without pay; hence, a person to whom the hospitality of a home, club, etc. is extended." As used in the statute, a "guest" is one who accepts a ride in any motor vehicle without payment therefor, and for his own pleasure or business. He is the recipient of the hospitality of the owner or driver: *Gledhill v. Connecticut Co.*, 121 Conn. 102 (183 Atl. 379). "Payment" as used in the statute does not necessarily mean a money compensation. "Payment" is not to be considered in its restricted legal sense as the discharge in money of a sum due or the performance of a pecuniary obligation: *Haney v. Takakura*, 2 Cal. App. (2d) 1 (37 P. (2d) 170); *Cardinal v. Reinecke*, 280 Mich. 15 (273 N. W. 330, 274 N. W. 379). If the person accepting the ride does so for the purpose of conferring some substantial benefit upon the owner or operator of the motor vehicle there is "payment" within the meaning of the statute and such person is not a mere guest: *McCann v. Hoffman*, 9 Cal. (2d) 279 (70 P. (2d) 909); *Elliott v. Behner*, 146 Kan. 827 (73 P. (2d) 1116); *Elliott v. Camper*, (Del.), 194 Atl. 130; *Lyttle v. Monto*, 248 Mass. 340 (142 N. E. 795).

In *Thomas v. Currier Lumber Co.*, 283 Mich. 134 (277 N. W. 857), the principal question was whether the plaintiff while riding in the motor vehicle at the time he sustained his injuries was "a guest without payment" within the meaning of the Michigan statute—which is substantially the same as that of this state. The court, in construing the statute, said:

"It would not be necessary, in holding that plaintiff was not a gratuitous guest passenger, to find that a cash

payment was made by him for his transportation. It is sufficient if a benefit accrued by reason of such transportation.''

Also to the same effect, see *McGuire v. Armstrong*, 268 Mich. 152 (255 N. W. 745), and *Knutson v. Lurie*, 217 Iowa 192 (251 N. W. 147); *Bree v. Lamb*, 120 Conn. 1 (178 Atl. 919); *Beer v. Beer*, 52 Ohio App. 276 (3 N. E. (2d) 702); *Gledhill v. Connecticut Co.*, supra.

In Blashfield's Cyclopedia of Automobile Law and Practice, § 2292, it is said:

''One important element in determining whether a person is a guest within the meaning and limitations of such statutes is the identity of the person or persons advantaged by the carriage. If, in its direct operation, it confers a benefit only on the person to whom the ride is given, and no benefits, other than such as are incidental to hospitality, companionship, or the like, upon the person extending the invitation, the passenger is a guest within the statutes; But, if his carriage tends to the promotion of mutual interests of both himself and the driver and operates for their common benefit or if it is primarily for the attainment of some objective or purpose of the operator, he is not a guest within the meaning of such enactments. Of course, a passenger for hire is not within their operation, regardless of whether the passenger or some one else pays or promises to pay for the transportation.''

As was said in *Knutson v. Lurie*, supra, and quoted with approval in *Wittrock v. Newcom*, (Iowa), 277 N. W. 286:

''One may be a passenger in an automobile without being a guest, a mere passenger by invitation, or a passenger for hire in the legal sense of the word. There are, in fact, a multitude of persons riding in cars daily who are not guests, passengers by mere invitation, or passengers for hire within the legal meaning of that term. A person riding in an automobile may be there because of the relationship of master and servant

existing between him and the owner. In other instances, the rider in an automobile may be there (without the relationship of master and servant) for the definite and tangible benefit of the owner or operator; or such person may be in the automobile (without the relationship of master and servant) for the mutual, definite, and tangible benefit of the owner or operator on the one hand, and of himself on the other.''

In *Haas v. Bates,* 150 Or. 592 (47 P. (2d) 243), plaintiff, a mining engineer, was transported by defendants in their automobile for the purpose of inspecting some mining property in which they were interested. The court held that the question of whether plaintiff was a guest was a matter for the determination of the jury. Plaintiff in that case made no monetary compensation for his transportation, but the benefits conferred upon defendants by going to inspect the property nevertheless constituted "payment" within the meaning of the guest statute.

Appellants rely upon *Smith v. Laflar,* 137 Or. 230, (2 P. (2d) 18), wherein the plaintiff was transported by the defendant, a real estate broker, for the purpose of bringing about an exchange of property owned by defendant's client. The court held that the commission which defendant might have earned if the trade had been consummated was too remote to be considered as payment. This is a border-line case. (See *Riley v. Berkeley Motors,* 1 Cal. App. (2d) 217 (36 P. (2d) 398), and *Dahl v. Moore,* 161 Wash. 503 (297 P. 218). The facts, however, are so much at variance with those in the instant case that we do not deem the decision controlling. After all, the decision in each case must necessarily depend upon the factual situation involved. It is true that the court said in the Laflar case that:
''* * * the test of whether there was any sum due for the transportation being furnished plaintiff by de-

fendant at the time of the accident is whether the defendant could have recovered in an action at law for the reasonable or agreed value of the transportation furnished.''

After careful consideration of the authorities we think that such test is too restrictive. It is rather a question of whether some substantial benefit has been conferred upon the owner or operator of the motor vehicle as compensation for the transportation. If there was, the person being transported is not a guest. It is not necessary to prove a legal contractual obligation in order to remove plaintiff from the status of a guest. There may be no enforceable contract and yet, if plaintiff was invited to ride for the purpose of rendering substantial assistance in the furtherance of the Safeway Stores' business, although not compensated therefor, he would not be a guest: *Haney v. Takakura*, supra; *Cardinal v. Reinecke*, supra; *Peronto v. Cootware*, 281 Mich. 664 (275 N. W. 724); *McCann v. Hoffman*, supra.

■ In the light of the above legal principles we cannot say as a matter of law that the plaintiff was a guest. It was a question for the jury. We do not think it was entirely unreasonable in view of all the facts and circumstances that Howard, although a competent and experienced driver, should have considered it advisable to secure the services of the plaintiff to help him drive. It was at a time of the year in this mountainous section of the state that snowstorms were to be expected. The highway was in a dangerous condition. It may be that Howard saw fit to provide against possible trouble. If, peradventure, Howard had become stalled with his car in a snowdrift and had requested some person to aid him in driving, would it then be contended that the person so rendering the service was merely a guest? It may be, as appellants contend, that plaintiff went

along merely as an accommodation, to keep his close friend and brother-in-law company. Or it may be, as respondent asserts that the motivating influence in his going was to render a substantial assistance in the event of need. It is a question upon which reasonable-minded persons might well differ. Under such state of the record it is not for this court to substitute its judgment for that of the jury.

■ Under ordinary circumstances the status of a guest would not be changed merely by reason of the fact that such person, at the request of the operator of a motor vehicle, did part of the driving. Such benefit would be too trivial or inconsequential to change the relationship of the parties: *Sullivan v. Harris*, (Iowa), 276 N. W. 88. In the instant case it is believed, however—although the question is close—that the facts and circumstances viewed in the light most favorable to plaintiff, present a question of fact for the jury.

■ Appellants here assert for the first time that plaintiff, by reason of the allegations of his amended complaint, negatives any other relationship between Howard and himself except that of a guest, since he has charged defendants with gross negligence. In this view we cannot concur. Appellants alleged affirmatively in their answers that plaintiff was a guest, and this is denied by plaintiff in his reply. Plaintiff never contended at any stage of the proceedings that he was a guest. The mere fact that plaintiff charged defendants with gross negligence does not preclude plaintiff from asserting that he was not a guest, as under such allegation recovery might be had on proof of simple negligence. Even though plaintiff was a guest he had a cause of action against Howard if gross negligence could be established. He had the right to make the most of his case. As stated in 45 C. J. 1138:

"Under an allegation of gross negligence, proof may be made and recovery had for simple negligence upon the theory that the greater wrong included the lesser * * *."

█ It is clear that in going to Burns for the purpose of inspecting the Safeway Stores' business and in returning therefrom Howard was acting within the scope of his employment. It is insisted, however, that Howard had no real or apparent authority to invite the plaintiff to ride with him on such trip. Appellant Safeway Stores asserts that it had never given its consent to Howard to carry passengers on these monthly inspection trips and that it had no knowledge of his ever having done so.

In our opinion, Howard, as district manager, had authority, express or implied, to do those things reasonably necessary to accomplish the purpose for which he was employed. He was, to all intents and purposes, the corporation itself in carrying on its business. Surely it was not necessary to have a meeting of the board of directors to authorize its district manager to secure the services of some person to aid in the furtherance of the company business. This is not a case involving the implied authority of an ordinary servant to invite persons into his car while engaged in his employer's business, but it is one wherein the very position of district manager carried with it the authority to do those things reasonably necessary to further the interests of the employer: 2 C. J. 643. It follows, therefore, that, if in fact the plaintiff was invited to go to Burns for the purpose of rendering substantial assistance to Howard in making his trip of inspection, Howard was not acting beyond the scope of his authority.

The rule applicable is thus stated in 5 American Jurisprudence, Automobiles, § 393:

"The mere fact that an employee uses his own automobile in the business of the employer does not make the latter liable under the doctrine of respondeat superior for injuries inflicted by such employee in the operation of the automobile. If, however, the other circumstances involved in the case are consistent with, or require, the inference that the activity in which the servant was engaged at the time of the tort complained of, and in which he was using his own car or one which he had hired, was within the scope of his employment, the person injured may recover from the employer, if the servant's use of the automobile or other vehicle was authorized, either expressly or impliedly. Thus, if an employee, with the knowledge and assent of the employer, repeatedly uses an automobile, not owned by the employer, in the latter's business, the employer will be held to have impliedly authorized its use and to be liable for negligence in connection therewith, but the mere fact that an automobile was used on one occasion, unaccompanied by any evidence of other similar acts, does not justify any inference that the employee was later authorized to use the machine upon the employer's business."

In the Restatement of the Law of Agency § 73, it is said:

"A manager may be in charge of the entire business of the principal or of a part of it. The size of the unit of which the agent has charge is unimportant in defining the scope of his discretion to act within such unit."

The evidence shows that Howard on numerous occasions had carried employees and other persons in his automobile while making these monthly inspection trips. Howard admits having taken the plaintiff to Burns five or six times, but, as he said, "as my guest at all times". The question of the authority of Howard was submitted to the jury by appropriate instructions. We are not prepared to say, as a matter of law, that he acted beyond the scope of his authority in inviting

plaintiff to ride with him. There is no merit in the contention that Howard was an independent contractor.

■ Appellant Howard assigns error in the refusal of the trial court to direct a mistrial when George Velvin testified that he had no insurance on his automobile. On direct examination, George Velvin thus testified:

"Q. Explain what the son did use the car for and how? A. Most of his usage of the car was when I would ask him to go to town to get the mail and when he took his girl home in the evening. I would give my consent to that—that was in Prairie City and vicinity—but on any long football trips I absolutely objected—one reason about that was *I had no insurance on that car* and I told him so. I didn't want * * *."

\* \* \* \* \*

"Q. I will ask you, George, whether the car was taken with your knowledge or consent when he took that trip? A. Strictly against my consent. I gave no consent whatever, nobody did."

On cross examination:

"Q. Now he had taken the car a couple of weeks before, hadn't he and gone to a football game? A. With my consent."

\* \* \* \* \*

"Q. Now you say on that occasion he had your consent? A. He did for the fact *the car was insured at that time.*

"Q. Now you testified also that he wanted to come to Baker at one time to a football game? A. Yes sir.

"Q. You wouldn't let him come at that time? A. For the simple reason *the car wasn't insured.*

"Q. You wouldn't let him use the car at that time? A. No sir."

\* \* \* \* \*

"Q. Did he ever take the car on any other occasion when you forbade him to do so on that particular occasion? A. I believe after *I had insurance* I allowed him the car for that reason." (Italics ours.)

The above excerpts from the record show that George Velvin, the owner of the car, strongly contended at the time of the accident in question that his son had no authority to drive the car. It was entirely proper and relevant for the father to state the reason why he had not given his consent to such use of the car, even if it did bring to the attention of the jury the matter of insurance: *Parker v. Norton*, 143 Or. 165 (21 P. (2d) 790); *Fletcher v. Saunders*, 132 Or. 67 (284 P. 276).

This factual situation is somewhat analogous to that in *Steele v. Hemmers*, 149 Or. 381 (40 P. (2d) 1022), wherein the father testified that after his liability insurance on the car had expired he had forbidden his boys to drive the car at night. In the instant case there was no effort made to lead the jury to infer that either Howard or the Safeway Stores were protected by insurance. No error was committed in refusing to direct a mistrial.

■ Appellant Howard asserts that the court erred in giving to the jury instructions Nos. 1, 2, 4, 5, 11, 18, and 40, "for the reason that the term 'negligence' is used in each of said instructions in referring to the acts of defendant Howard and it is 'gross negligence' or 'reckless disregard of the rights of others' that determines the liability, if any of defendant Howard".

The court in other parts of its instructions clearly defined "gross negligence", as distinguished from ordinary negligence. It also instructed the jury in keeping with the law herein declared as to what constituted a "guest" within the meaning of the statute. The jury was further told that if it found plaintiff to be a guest there could be no liability against Howard, unless gross negligence were established. The instructions when considered in their entirety clearly and fairly presented the issues. The jury was not misled.

■ Appellant Safeway Stores assigns error because the court permitted witness Ralph Smith to "testify that when Howard came to Burns in his car he sometimes came alone and at other times he had his wife and employees of the Safeway Stores with him. And in permitting the witness B. G. Thompson to testify over objection to the effect that he had gone to Burns with Howard in Howard's car at a time when he was a fellow employee." In our opinion it was proper to show that it was the practice of Howard to take employees and other persons with him on these various monthly inspection trips as tending to show that the Safeway Stores knew or ought to have known of such transportation and made no objection thereto. Of course, the real issue concerned the trip in question, but the above evidence was nevertheless relevant and competent.

■ Appellant Safeway Stores claims the court erred in "permitting the witness B. G. Thompson to testify over objection to the effect that certain advertising in the Safeway Stores did not limit the courtesies to be extended by store employees." Such evidence ought to have been excluded as having no bearing on the issues, but it was not prejudicial and did no harm except to waste time.

■ It is claimed the court erred in "permitting the witness Harlan Moore, called on behalf of the plaintiff, to testify to the effect that after the accident the speedometer on the Howard car was stuck at sixty miles an hour". This evidence was entitled to go to the jury for what it was worth relative to the issue of negligence. The jury was not bound to accept as conclusive the testimony of the expert witness Clark that such position of the speedometer needle did not indicate anything at all concerning the matter of speed. The objection really

goes to the weight of the evidence in question and not to its admissibility.

There are other assignments of error most of which pertain to the instructions of the court, but, in our opinion, none of them merits discussion. The cause was fairly submitted and, although the verdict is large, it is not excessive in view of the injuries sustained.

The judgment of the lower court is affirmed.

RAND, ROSSMAN, and KELLY, JJ., not sitting.