Argued October 4, reargued December 6, reversed and
remanded December 11, 1963

# SPRING *v.* LILES

387 P. 2d 578

*Garry Kahn,* Portland, argued the cause for appellant. *Philip A. Levin* reargued the cause for appellant. With them on the brief were Pozzi, Levin & Wilson.

*George L. Hibbard,* Oregon City, argued and reargued the cause for respondent. On the brief were Hibbard, Jacobs, Caldwell & Kincart, Oregon City.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and DENECKE, Justices.

O'CONNELL, J.

This is an appeal from a judgment of involuntary nonsuit entered against the plaintiff in his action for damages for personal injuries suffered while riding in defendant Liles' automobile.

Plaintiff testified that on the night of the accident he, defendant Liles, and others were employed by defendant Logsdon to gather chickens at various chicken ranches in the vicinity of the accident preparatory to taking the chickens to market. When the work party was about to start out for the first ranch it was found that there was not sufficient room in Logsdon's automobile for all the employees, whereupon Logsdon directed plaintiff to ride in defendant Liles' car. The work crew reached the first ranch safely. En route to the second ranch the Liles car left the road and plaintiff was injured. Plaintiff did not pay Liles for the ride nor did Liles receive any extra compensation from Logsdon for the use of the car. Liles explained that he

used his car because he "wanted to work, because I could go and some of the other guys could go, too" and "[b]ecause I was the only one that had a car besides Larry Logsdon." Liles testimony makes it clear that Logsdon asked Liles to transport plaintiff and other members of the chicken catching crew to their place of work.

The judgment of involuntary nonsuit was based upon the proposition that the evidence established that the plaintiff was a person who had accepted a ride in an automobile without conferring a substantial benefit on the driver and was, therefore, a guest under ORS 30.110.[1]

■ ORS 30.110 precludes recovery for simple negligence where the occupant of the vehicle is a "guest without payment" for the transportation. Generally the fact that the defendant-driver does not receive a substantial benefit for the transportation has been deemed sufficient to characterize the plaintiff-occupant as a guest. However, the absence of substantial benefit to the driver is not the sole criterion to be used in determining the host-guest relationship under the statute. This is demonstrated by such cases as *Kudrna v. Adamski,* 188 Or 396, 216 P2d 262, 16 ALR2d 1297 (1950) where the driver received no benefit and yet the

[1] ORS 30.110 read as follows:

"No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against the owner or operator for injury, death or loss, in case of accident, unless the accident was intentional on the part of the owner or operator or caused by his gross negligence or intoxication or his reckless disregard of the rights of others."

ORS 30.100 was repealed by 1961 Oregon Laws, ch 578, § 1. ORS 30.115 was enacted in lieu of ORS 30.110 and 30.120.

plaintiff-occupant was permitted to recover.[8] Other cases further illuminate this point. Thus it is held if an occupant makes a protest with respect to the manner in which the vehicle is being driven and requests to be let out he is not a guest within the meaning of the statute.[9]

■ A person is not a guest within the meaning of the statute unless he is transported without payment *and* he is also a guest in other respects. In the illustrative cases referred to above the occupant, although paying nothing for the transportation, was not within the guest category because some other element in the rela-

[8] In the *Kudrna* case the defendant was transporting a four-year old infant at her mother's request to an appointment with a doctor. The defendant received no compensation for the trip. It was held that the relationship of host and guest is a consensual one in which the guest must exercise some choice and that a four-year old infant is incapable of exercising that choice and hence incapable of being a guest. Alternatively, the court noted that a child entering a car in the custody of its parent does not do so voluntarily and cannot be said to have accepted an invitation.

See also, Rocha v. Hulen, 6 Cal App2d 245, 44 P2d 478 (1935) (child being driven to hospital by defendant without consent of parents is not a guest); Green v. Jones, 136 Colo 512, 319 P2d 1083 (1957) (two-year old child cannot be a guest because incapable of accepting invitation).

There are cases in which a minor is held to be a guest. Compare Welker, Adm. v. Sorenson, 209 Or 402, 306 P2d 737 (1957) (infant was a guest when riding in automobile in custody of mother who was also a guest) and the cases cited in Annotation, Infant as Guest Within Automobile Guest Statutes, 16 ALR2d 1304 (1951).

[9] Andrews v. Kirk, 106 So2d 110 (Fla 1958) (plaintiff's status changed from guest to involuntary passenger after she protested as to defendant's driving, requested to be let out, and the defendant refused); Blanchard v. Ogletree, 41 Ga App 4, 152 SE 116 (1930) (protest against manner in which defendant was driving coupled with request to leave the car held to remove plaintiff from the operation of common law guest rule). Cf., Senechal v. Bauman, 232 Or 217, 375 P2d 60 (1962) (mere protest not enough to indicate intent to terminate the host-guest relationship). See Annotation, Protest by Guest Against Driver's Manner of Operation of Motor Vehicle as Terminating Host-Guest Relationship, 25 ALR2d 1448 (1952).

tionship was lacking. In *Kudrna v. Adamski,* supra at p. 399, it was held that our "statute implies that in order to become a guest one must exercise a choice in the matter." Not only must the relationship be created consensually, the transportation must be furnished by the host as a gesture of hospitality.[4]

In many of the cases it seems to be assumed that if a substantial benefit does not inure to the driver the relationship must necessarily be that of host and guest. Consequently, even where no element of hospitality is involved in the creation of the relationship, the court may deem it necessary to find a substantial benefit to the driver. Thus in the cases where an employee is riding with his employer in the furtherance of the employer's business, the opinions generally explain the absence of the host-guest relationship on the ground that the driver receives a benefit in that his business purpose is served. Similarly, where plaintiff is riding in the defendant's car, not as the recipient of defendant's hospitality but because plaintiff and defendant are engaged in a common mission, the assumption seems to be that unless a substantial benefit to the defendant is found the relationship will be that of host and guest.

For example, in *Simms v. Tingle,* 232 Ark 239, 335 SW2d 449 (1960), plaintiff and defendant were engaged in the non-profit mission of selling and distributing church literature. In holding that plaintiff was not a guest within the meaning of the Arkansas

---

[4] "The relation of host and guest presupposes (1) that the host has a right to extend hospitality to the guest at the particular place where he is invited to be present, and (2) that an invitation, express or implied, has been given." Richards v. Parks, 19 Tenn App 615, 93 SW2d 639, 642 (1936) cited in Kudrna v. Adamski, 188 Or 396, 402, 216 P2d 262 (1950). To the same effect see Green v. Jones, 136 Colo 512, 319 P2d 1083 (1957).

guest statute the court felt it necessary to find a bene-
fit flowing to the defendant. The court said (at p. 244,
335 SW2d at 452): "The appellee's [defendant's] con-
tention that no benefit flowed to the appellee in col-
lecting money for the church we hold to be without
merit for otherwise a great host of religious workers
have wasted many valuable hours."⑨ A further indi-
cation that the status of passenger is not solely deter-
mined by the payment of compensation to the driver
is found in cases where despite actual payment the

⑨ The *Simms* case is only one example of the rather tenuous
benefits upon which the courts have relied in their quest to find
a host-passenger relation between the defendant and plaintiff.
Phillips v. United States, 182 F Supp 312 (E D Va 1960) (dictum
that veteran being transported in an ambulance is not a guest since
the transportation is in consideration of his earned rights to hospi-
talization); Tucker v. Landucci, 57 Cal2d 762, 371 P2d 754 (1962)
(plaintiff traveling to dinner with fellow employee to discuss
employer's style show held not a guest since plaintiff was involved
in the show and defendant would benefit from the show as a
salesperson); Kruzie v. Sanders, 23 Cal2d 237, 143 P2d 704 (1943)
(benefit sufficient to remove plaintiff from guest status found in
her agreement to assist the defendant with Christmas shopping);
Dobbs v. Sugioka, 117 Colo 218, 185 P2d 784 (1947) (plaintiff not
a guest where plaintiff and defendant employed by the same
principal, engaged in the same activity, on an obligatory mission,
and defendant was permitted to furnish transportation with ex-
penses to come from the principal); Thuente v. Hart Motors, 234
Iowa 1294, 15 NW2d 622 (1944) (scrap drive to aid the defense of
country said to be mutual enterprise of plaintiff and defendant
thus removing plaintiff from operation of guest statute); McGuire
v. Armstrong, 268 Mich 152, 255 NW 745 (1934) (patient being
transported in automobile by county nurse in the course of her
employment held not to be a guest); Vest v. Kramer, 158 Ohio St.
78, 107 NE2d 105 (1952) (boy scout held not to be a guest of
assistant scoutmaster while assisting in paper drive for benefit of
troop); Parrish v. Ash, 32 Wash2d 637, 203 P2d 330 (1949) (evi-
dence that plaintiff on the day prior to the accident had paid
driver one dime for transportation held sufficient to warrant
jury's finding that plaintiff was not a guest). See also, United
States v. Westfall, 197 F2d 769 (9th Cir 1952); Buffat v. Schnuckle,
79 Idaho 314, 316 P2d 887 (1957); Zaso v. De Cola, 72 Ohio App
297, 51 NE2d 654 (1943).

plaintiff is held a guest because the relationship is characterized as primarily a social one.[⊙]

We believe that the insistence upon finding a benefit to the defendant-driver involves an incomplete analysis of the problem. As we have indicated, the absence of a benefit to the defendant does not necessarily establish a host-guest relationship between the defendant and the plaintiff-occupant. Even in the absence of a benefit to the defendant, the plaintiff is a passenger (as distinguished from a guest) if his presence in the vehicle does not arise primarily from the hospitality of the defendant. In the cases alluded to above there was no benefit to the defendant that has any relevancy in explaining whether the relationship of the plaintiff-occupant to the defendant was that of guest or passenger. In *Simms v. Tingle,* supra, the benefit to the defendant in the form of spiritual satisfaction was not the element which took the plaintiff out of the guest category; the plaintiff was a passenger because the transportation was not offered primarily as a gesture of hospitality. And so with the cases in which the plaintiff employee is riding with defendant employer on a business mission; the plaintiff is a passenger rather than a guest, not because the defendant receives a benefit as a result of transporting the

---

[⊙] In re Dikeman's Estate, 178 Kan 188, 284 P2d 622 (1955) (occupant held to be guest though she had promised to pay share of expense for trip to convention at which she and driver were delegates); Phelps v. Benson, 252 Minn 457, 90 NW2d 533 (1958) (neither plaintiff's ownership of car nor his agreement to share expenses with driver removed him from the operation of the guest statute); Hale v. Hale, 219 N C 191, 13 SE2d 221 (1941) (payment for gasoline by father on trip with son to visit relative held insufficient to remove father from guest status); Casper v. Higgins, 54 Ohio App 21, 6 NE2d 3 (1935) (student returning from debate tournament in instructor's car held a guest even though he contributed to expenses of the trip).

plaintiff but because the element of social hospitality does not motivate the transaction.

The point we are stressing here has been recognized occasionally in other cases. In *Kijanko v. Bialecki*, 21 West Weekly Rep (n.s.) 214, 216 (1957) the court was called upon to interpret a statute similar to ORS 30.110, containing the phrase "guest without payment." Maybank, J., obseved that the plaintiffs had made no payment for the transportation and said: "Such a passenger must also be describable as 'a guest.'" He went on to explain, "I do not think that such an appellation fits the plaintiffs. * * * One is invited to the home of a friend for social intercourse: He is a guest. On the other hand one invited to the home of a friend for a purely business conversation is not a guest, not even if the person inviting offers some hospitality coincident with the business talks. It seems to me that the meaning of the word 'guest,' as used in the statute, must imply hospitality and imply that hospitality is the reason for the transportation." The court then went on to define a guest in terms of a social relationship with his host. A similar view was expressed in *Wood v. Thompson and Tompko*, 23 West Weekly Rep (n.s.) 14 (1957).[2]

We construe ORS 30.110 to mean that two elements must co-exist to create the host-guest relationship: (1) there must be no substantial benefit to the defendant, and (2) the invitation extended to the plaintiff

---

[2] A comment on these cases appears in 29 Manitoba Bar News 81, 82 (1957), where the author states:

"These cases clearly indicate that there are two separate and distinct qualifications that must be specified in determining the nature of the relationship between the driver-owner and the passenger. FIRSTLY: There must be no question of payment or gain in a commercial sense to the driver, or owner, and SECONDLY: the circumstances of the transporting must be of a social nature."

must be motivated predominantly by the defendant's spirit of hospitality.

This interpretation of ORS 30.110 comports with one of the principal purposes which gave rise to its adoption. That purpose is stated in *Albrecht v. Safeway Stores, Inc.,* 159 Or 331, 336, 80 P2d 62 (1938).

"\* \* \* It was not considered just that one who accepts the kindness or hospitality of an automobile owner or operator, in extending an invitation to ride, should recover damages for personal injuries unless the same resulted from gross negligence, intoxication, or an intentional wrong."[8]

We agree with the recommendation in 2 Harper & James, Torts § 16.15, p. 961 (1956) that the operation of the guest statutes should "be carefully confined to those who come clearly within the first purpose of the rule" (the purpose explained in the quotation from the *Albrecht* case set out above).[9]

We now consider whether plaintiff falls within the term "guest without payment" as we have construed it. The evidence was sufficient to support a jury conclusion that defendant and plaintiff were both employed by Logsdon. Plaintiff was directed by Logsdon

---

[8] "The purposes of the statutes were to scotch 'the proverbial ingratitude of the dog that bites the hand that feeds him,' and to put a barrier in the way of vexatious litigation—the vexation presumably which would result from dishonest collusion between guest and host against the host's insurance carrier." 2 Harper & James, Torts, § 16.15, p. 961 (1956).

[9] Continuing, these authors recommend that " 'Guest' should be defined so as to include only those who ride gratuitously in every substantial sense. It should exclude those who ride with the host for a common purpose (other than pleasure) or primarily as a favor to the host (though not in the way of business) or pursuant to any prearrangement for sharing the burdens of the journey, so long as the occupant's undertaking is not so vague or so trivial as to indicate that there was no real sharing worthy of the name." 2 Harper & James, Torts, § 16.15, pp. 961–962 (1956).

to ride with defendant. Logsdon requested defendant to transport plaintiff and other employees in defendant's car. There is no evidence that defendant had any obligation either to Logsdon or plaintiff to use his car in transporting plaintiff or the other persons employed by Logsdon. Nor is there evidence that defendant received any benefit pecuniary or otherwise for transporting plaintiff and the other employees. There being no benefit to defendant, the question is whether there is present the other element essential to the host-guest relationship, i.e., the hospitable character of the invitation.

█ It might be said that since defendant had no legal or moral obligation to transport plaintiff the granting of permission to ride was an act of "hospitality." On the other hand, looking at the transaction from plaintiff's standpoint it would seem reasonable to say that he rode with defendant not because the latter's hospitality was extended to him but because he was directed by Logsdon to ride in defendant's car. He rode in defendant's car only because there was no room for him in Logsdon's station wagon. If plaintiff had been injured while riding in Logsdon's car, the relationship could certainly be considered nonsocial and, therefore, not within the statute. Plaintiff found himself in defendant's car as the result of the exigency of the moment. Plaintiff and defendant were thrown together because a problem arose incident to their common employment. We do not believe that this is the type of motivation bringing a driver and passenger together which characterizes the creation of the host-guest relationship. The jury would be warranted in finding that plaintiff was riding in defendant's car not as the recipient of defendant's hospitality, but as a co-employee forced by circumstances to ride in defendant's car to

further a common interest in carrying out the job both were employed to perform. Under these circumstances we think the jury could properly decide that the permission to ride was not motivated by defendant's "kindness" or "hospitality" to borrow the language from *Albrecht v. Safeway Stores,* supra.

We do not mean to suggest that the relationship did not arise from hospitality simply because plaintiff and defendant were destined for the same place of employment. A plaintiff who rides to work at the invitation of a co-employee ordinarily would be a "guest" within the meaning of ORS 30.110.[⑩] The important factor in the present case is that the plaintiff rode with the defendant, not as a result of defendant's invitation nor of plaintiff's acceptance, but because both were directed by the common employer to ride together for the purpose of carrying out the employer's plan of employment.

The judgment is reversed and the cause is remanded for a new trial.

PERRY, J., dissents.

---

[⑩] Benjamin v. Rutherford, 146 Cal App2d 561, 303 P2d 1079 (1956) (employee transported to work by fellow employee in car furnished by company for that purpose held guest); Bummer v. Liberty Laundry Co., 48 Cal App2d 648, 120 P2d 672 (1941) (plaintiff who was driven to work in employer's truck by fellow employee held to be a guest where there was no definite arrangement and no compensation.) The contrary result frequently prevails where there is a "share the ride" or "share expenses" agreement; Nielsen v. Kohlstedt, 117 NW2d 900 (Iowa 1962) (brick tender riding to work with fellow worker held guest where there was no payment); Ehrsam v. Borgen, 185 Kan 776, 347 P2d 260 (1959) (an agreement whereby the plaintiff and the defendant exchange rides to and from work removed the plaintiff from the operation of the guest statute). See also, Annotation, Host and Guest Relationship, Within Statute or Rule Regarding Liability of Driver or Operator of Motor Vehicle for Injury to Guest, As Between Parties to "Share-a-Ride" Arrangement, 146 ALR 640 (1943) supplemented by 161 ALR 917 (1946).