Floyd K. CARMAN, Appellant,

v.

Velda HARRISON, Administratrix of the Estate of Lester Ray Harrison, Deceased, Appellee.

No. 18241.

United States Court of Appeals Eighth Circuit.

June 30, 1966.

M. M. Maupin (of Maupin, Dent, Kay & Satterfield), North Platte, Neb., for appellant. C. J. Gatz, North Platte, Neb., on the brief.

James A. Lane (of McGinley, Lane, Mueller & Shanahan), Ogallala, Neb., for appellee. Thomas M. Shanahan, Ogallala, Neb., and James M. Knapp (of Tye, Worlock, Knapp & Tye), Kearney, Neb., on the brief.

Before VOGEL, Chief Judge, and MATTHES and GIBSON, Circuit Judges.

VOGEL, Chief Judge.

Velda Harrison, plaintiff-appellee herein, commenced this action against defendant-appellant Floyd K. Carman and defendant Howard E. Smith for damages sustained by reason of the wrongful death of her husband, Lester Ray Harrison, who died from injuries received in an automobile accident. The case was tried to a jury and resulted in a verdict in favor of the plaintiff against the two defendants for $50,963. At the same trial the jury rendered a $3,442.50 verdict in favor of defendant Carman on his cross-claim lodged against his co-defendant Smith. Smith did not appeal and the subsequent judgments entered against him are not in issue. Carman's appeal from the judgment rendered against him in favor of the plaintiff is thus the sole one with which we are here concerned. The parties will be referred to as they were in the court below. Diversity of citizenship and the amount sued for establish federal court jurisdiction.

At approximately 7:30 p. m. on the night of April 10, 1962, the decedent, Lester Ray Harrison, and one Orville

Pederson[1] were passengers in an automobile operated by defendant Carman.[2] The three men were on U. S. Highway 6 heading east and were traveling the 17-mile distance from Imperial, Nebraska, where they had been working, to Wauneta, Nebraska, where Carman lived and where Harrison and Pederson were boarding. The night was dark and there was a mist or light fog in the air.

Approximately three-quarters of a mile east of Imperial, while traveling between 40 and 50 miles per hour, Carman's automobile met an oncoming car headed west. That car's lights caused a glare on defendant's windshield which he claimed sort of blinded him. Carman thought he reacted by lifting his foot off the accelerator. As soon as the oncoming car had passed, the occupants of Carman's automobile saw a truck-tractor and trailer loaded with grain parked in the middle of their lane for east-bound traffic. Carman applied his brakes but a few seconds later his automobile collided with the rear of the parked vehicle. A later investigation showed that skid marks of 48 feet 9 inches for the right tires and 54 feet 6 inches for the left tires were left by the Carman antomobile prior to the impact. Apparently Carman had not veered and he struck the back of the grain tractor-trailer "nearly dead center". The injuries sustained by the decedent, who was sitting in the right front seat of the automobile, resulted in his death. Carman and Pederson survived.

The tractor-trailer was owned and operated by defendant Smith. The rear of the tractor-trailer was 7 feet 10 inches wide. The grain box thereon had been painted with white enamel. The frame below the grain box was painted red. The drivers of two other eastbound cars testified that prior to the accident they had seen the parked tractor-trailer ahead of them in time to avoid running into it. However, the tractor-trailer was not seen by the occupants of these cars until they were within approximately four to eight car lengths thereof.

The tractor-trailer had stalled on the highway after its drive line had dropped down to the road surface because of sheared bolts. This caused the tractor-trailer to lose all of its power. It stopped at a point about two feet 9 inches south of the center line of the highway. At the time of the accident defendant Smith had abandoned the tractor-trailer to seek aid. He claims that before doing so he had turned on a flasher switch which operated lights on each front fender and the turn signals on the rear of the tractor-trailer; that he had placed out three reflector-type flares, one at the center of the truck just south of the center line of the highway and one each to the east and west of the tractor-trailer, about 35 paces therefrom; and that he had turned off his running lights. There is direct conflict of testimony among various witnesses as to whether or not there were flares or lights on or near the truck. After the accident the investigating sheriff found three reflector-type flares allegedly set out by defendant Smith.

At the time of the accident Carman was employed as a heavy equipment operator by one Harlan Smith, who is in no way related to the co-defendant, Howard E. Smith. The decedent and Pederson were employed by a partnership composed of Carl Whitney and Ernest Richter. This partnership had leased some heavy equipment to Harlan Smith. Pursuant to the leasing agreement, the decedent and Pederson were furnished to Harlan Smith as operators of the leased equipment. Carman and the decedent had known each other for quite a few years and had been co-employees on jobs for some period of time.

On the day of the accident the decedent and Pederson had been performing land leveling operations under the direction

---

1. The appellant's brief spells the name Pederson as it appears in this opinion. The spelling of the name as it appears in the appellee's brief is "Pedersen". The printed record spells the name both ways.

2. It is stipulated that the automobile was owned by Carman's wife and that he was driving it with her consent.

of Harlan Smith near Wauneta. This operation was shut down in mid-morning because of rain. Harlan Smith then decided to take the decedent and Pederson to Imperial in his car to help with the overhauling of one of his machines. Carman was already working on the machine at a shop in Imperial. Even though the decedent and Pederson received no salary or wages for the afternoon,[3] they helped out by cleaning pistons and pins on Harlan Smith's machine. During the afternoon the decedent took a company pick-up truck, went to the airport and obtained parts, which he brought back to the shop.

About 6:30 p. m. that evening Harlan Smith, who decided not to return to Wauneta, asked Carman if he would take the decedent and Pederson back to Wauneta when he, Carman, went home. Harlan Smith also asked the decedent and Pederson if they minded returning to Wauneta with Carman. After stopping at a local cafe for a short time, the three men departed on their ill-fated trip. Carman was not paid mileage for the operation of his vehicle, nor was he paid any subsistence on April 10, 1962.

The evidence indicates that on March 23, 1962, prior to the accident, Carman had suffered an arc welder's burn to both of his eyes; that he was treated for such condition on the following day and again on March 26th; and that on March 30, 1962, he was further treated for the eye burns, at which time he told the attending physician that his right eye was more painful than his left. Medical testimony indicated that an eye burn of this type causes the eyes to be extremely sensitive to light. However, at trial Carman claimed not to have been conscious of having any difficulty with his eyes before the accident. On April 21, 1962, some three days after Carman had been released from the hospital following the accident, Dr. Bryce Shopp removed some sutures from a cut on Carman's head. Dr. Shopp, refreshing his memory by referring to Carman's clinical record, testified concerning a conversation that took place at that time:

"Q. What was said?

"A. First of all, he [Carman] states that he had a runny nose on the right side. Secondly, he stated his eyes caused the wreck. His eyes caused wreck. I will omit the word 'the' because I do not have it recorded there.

"Q. You were treating him for injuries at this time he received in an accident on April 10, 1962?

"A. This injury was acquired on April 10th. This was the first time I treated him. I was out of town at the time of the accident."

The Nebraska "guest" statute, Rev. Stat.Neb. 1943 § 39–740 (Reissue of 1960), provides:

"*Guest passenger, defined; claim for damages; rights.* The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in such motor vehicle as a guest or by invitation and not for hire, unless such damage is caused by the driver of such motor vehicle being under the influence of intoxicating liquor or because of the gross negligence of the owner or operator in the operation of such motor vehicle. For the purpose of this section, the term guest is hereby defined as being a person who accepts a ride in any motor vehicle without giving compensation therefor, but shall not be construed to apply to or include any such passenger in a motor vehicle being demonstrated to such passenger as a prospective purchaser."

The District Court, Robinson, Chief Judge, refused to instruct the jury to the effect that the guest statute was applicable and that a finding of gross negligence would thus be necessary to support a verdict against the defendant Carman. In effect, then, the District Court held, as a matter of law, that the decedent was not a guest within the purview of the

3. However, they were receiving subsistence pay of $4 each for the day as their work with and for Harlan Smith required that they be away from home.

statute and that a finding of ordinary negligence would support a recovery. Carman's major contention on appeal is that this was error. He contends that the evidence unquestionably establishes that decedent was a guest, that only gross negligence would sustain a recovery against him, that the evidence, as a matter of law, failed to establish gross negligence, and that his motions for a directed verdict should have been sustained. In the alternative, Carman contends that the issue of plaintiff's decedent's status as passenger or guest should have been submitted to a jury and, at the very least, a new trial should be granted. We affirm the trial court.

■ In this diversity case we are bound by the law of the State of Nebraska and the interpretations thereof by its Supreme Court. Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. The Nebraska guest statute has been the subject of interpretation by its Supreme Court and by this court.

In Van Auker v. Steckley's Hybrid Seed Corn Co., 1943, 143 Neb. 24, 8 N.W.2d 451, 453, the Nebraska court stated:

"The question of whether a person riding in a motor vehicle is a guest, or engaged in a joint enterprise, or other relationship, is generally one for determination in the individual case. 5 Am.Jur. 634, sec. 239. It must be ascertained from facts establishing the identity of the persons advantaged by the carriage, the relationship between the parties, and the purposes to which the transportation is incident. To these facts we then apply logical constructions of statutory words and phrases approved by definitum-precedent. *If the evidence is undisputed, or such that minds of men could not reasonably arrive at any other conclusion, the question is one for decision by the court as a matter of law;* otherwise, it is a question for the jury to decide as other issuable facts in the case. 64 C.J. 549; Mick v. Oberle, 124 Neb. 433, 246 N.W. 869." (Emphasis supplied.)

This statement was reaffirmed by the Nebraska court in Carter v. Chicago, B. & Q. R. Co., 1960, 170 Neb. 438, 103 N.W.2d 152, 163.

■ The facts in the case at bar, insofar as they pertain to the relationship of the decedent to Carman for purposes of applying the Nebraska guest statute, are undisputed. The status of the decedent as "passenger" or "guest" in Carman's automoblie could accordingly be determined as a matter of law. On these undisputed facts, we believe the District Court permissibly determined that the decedent was not a "guest" within the purview of the guest statute.

Defendant Carman argues that no compensation flowed to him for the carrying of the decedent and Pederson from Imperial back to Wauneta, that it was purely a gratuitous act and that accordingly the decedent occupied the status of a "guest" under the statute. In *Van Auker,* supra, the Supreme Court of Nebraska said, at pages 453–454 of 8 N.W.2d:

" 'Compensation' means that which constitutes or is regarded as an equivalent or recompense; that which makes good the lack or variation of something else; that which compensates for loss or privation; amends; remuneration; recompense. The phrase 'without giving compensation therefor' in the statute indicates an intention not to limit compensation to persons specifically paying for transportation in cash or equivalent, or to require that it pass exclusively from the passenger to the driver. 8 Words and Phrases, Perm. Ed. p. 197; Crawford v. Foster, 110 Cal.App. 81, 293 P. 841; Haney v. Takakura, 2 Cal.App.2d 1, 37 P.2d 170, 38 P.2d 160; 5 Am.Jur. 634, sec. 239.

"Bearing these preliminary rules in mind, we conclude that a person riding in a motor vehicle is a guest if his carriage confers only a benefit upon himself and no benefit upon the owner or operator except such as is incidental to hospitality, social relations, companionship, or the like, as a mere gratuity, and no recovery can be had

under our statute except for gross negligence. *However, if his carriage contributes such tangible and substantial benefits as to promote the mutual interests of both the passenger and the owner or operator, or is primarily for the attainment of some tangible and substantial objective or business purpose of the owner or operator, he is not a guest.* If the latter rule be applicable to the present case, plaintiff could recover for ordinary negligence unless prevented by the defensive theory of imputed negligence. See 4 Blashfield, Cyclopedia of Automobile Law and Practice, Perm.Ed., § 2292; annotations 82 A.L.R. 1365; 95 A.L.R. 1180; Doherty v. Edwards, 227 Iowa 1264, 290 N.W. 672." (Emphasis supplied.)

Accord: Davis v. Landis Outboard Motor Co., 1965, 179 Neb. 391, 138 N.W.2d 474, 478–479.

*Van Auker* dealt with a situation where a farmer was invited by the defendant seed company to help them promote their products at a state fair. An accident occurred while the farmer was being transported to the site of the fair in the company's automobile. The farmer was held not to be a "guest" within the meaning of the Nebraska statute but, rather, was held to be a "passenger" giving "compensation" for transportation. In so holding, the Nebraska court stated at pages 454–455 of 8 N.W.2d:

"* * * The field supervisor testified that he wanted deceased to go with them because he had been a lot of help to their company in the past in the sale of seed corn; that deceased would have worked in the booth and helped the company boost the sales, and he wanted him to go along for that purpose.

\* \* \* \* \* \*

"Under these circumstances it will not avail to question the extent of the invitation or to assert that there was no agreement or promise that the deceased would do anything to help or assist the Steckleys in their business. Their duly authorized agents gave deceased an inclusive invitation to go with them, primarily for the attainment of a tangible and substantial objective or business purpose of the owner, and he agreed to go. Further, after the invitation was given he acted upon it. He got in the car and they left for the project, thereby accepting defendants' offer as to time, place, mode and manner. See 13 C.J. 275, 17 C.J.S., Contracts, § 41. *Concededly the relationship must be definite and the benefit tangible, but it is not required that the relationship be such that the benefit accruing is the consideration for the transportation agreed upon by the parties.* Doherty v. Edwards, 227 Iowa 1264, 290 N.W. 672. Deceased was not a guest or person riding 'without giving compensation therefor.' Cases relied upon by defendants are not applicable to present facts." (Emphasis supplied.)

The *Van Auker* situation can be likened to that in the instant case. Harlan Smith, the employer of defendant Carman, was the supervisor of the decedent and Pederson through the lease agreement entered into between him and the Whitney-Richter partnership. He took the decedent and Pederson to Imperial on the day of the accident, where these men admittedly assisted in performing work in and around the machine shop where Carman was overhauling one of Harlan Smith's machines. Harlan Smith, having transported the decedent and Pederson to Imperial and having used them there in overhauling one of his machines being worked on by defendant Carman, was under the obligation to return them to Wauneta. He fulfilled this obligation by asking his employee, Carman, to return the men to Wauneta. Here there was a joint business purpose. The transportation was for the mutual benefit of all concerned. The District Court could properly find from these undisputed facts that Carman was, in effect, a co-employee following the directions of his employer to transport the decedent and Pederson back to Wauneta from Imperial. As is clearly stated in

*Van Auker,* the benefit to Carman need not have been actual compensation for transporting the decedent and Pederson to make the guest statute inapplicable. It was enough that he performed this act for business reasons at the request of his employer.

This case is strikingly similar to one decided by the Supreme Court of Iowa, Powers v. Hatcher, Iowa, 1965, 135 N.W. 2d 114, at page 116, wherein it is stated:

"* * * As pointed out in Hansen v. Nelson, supra, [240 Iowa 1298, 39 N.W.2d 292] *where the operator and the passenger are in the performance of service for their common employer it is not necessary that the driver derive any special benefit. Neither is invited by the other.* To like effect is Spring v. Liles, 236 Or. 140, 387 P.2d 578. It is there pointed out to avoid the guest-host relationship it is not always necessary to show a benefit to the owner or operator either special to the owner or operator or mutual to both the owner or operator and the passenger." (Emphasis supplied.)

Herein the undisputed facts clearly allowed Judge Robinson to justifiably conclude that Carman, the decedent and Pederson were co-employees within the purview of the *Powers* rationale.

In *Van Auker* the Nebraska court quoted with approval from certain California decisions because of the similarity of its guest statute to that of Nebraska. In Martinez v. Southern Pac. Co., 1955, 45 Cal.2d 244, 288 P.2d 868, 872, the Supreme Court of California stated:

"* * * Where the trip is primarily for a business purpose rather than a social purpose, it is sufficient to show that the driver was to derive a substantial benefit from the transportation, Kruzie v. Sanders, supra, 23 Cal.2d 237, 242, 143 P.2d 704; and *such substantial benefit may be found if the transportation was for the mutual economic benefit of all concerned.* Thompson v. Lacey, supra, 42 Cal.2d 443, 447, 267 P.2d 1." (Emphasis supplied.)

See, also, Thompson v. Lacey, 1954, 42 Cal.2d 443, 267 P.2d 1, where the California court held that a passenger was not a "guest" within the meaning of the guest statute when he was injured while being transported by a co-employee to a meeting called by their common employer. Even though the driver therein was being reimbursed for his mileage costs by the employer, the court knew "* * * of no authority, however, which holds that compensation for the transportation must be paid by the one transported in order to make it transportation for compensation under section 403 of the Vehicle Code [the California guest statute]." 267 P.2d at p. 3. Regardless of the reimbursement, the trip to the conference in *Thompson* "was for the mutual economic benefit of all, Thompson, Kerns, Dreis, and the company, [and] * * * the three [went] to the meeting because of the relationship between them and the nature and purpose of the meetings and the regular occurrence thereof." Ibid.

In Bailey v. Pennington, 8 Cir., 1960, 274 F.2d 328, this court held that where the plaintiff, a training officer in the vocational rehabilitation educational division of the Veterans Administration Regional Office, was being transported in the car of an instructor employed by the state and where the two had a common business purpose, the training officer was not a "guest" within the meaning of the Nebraska guest statute. See, also, the recent case of Snelling v. Pieper, 1965, 178 Neb. 818, 135 N.W.2d 707. Therein the Nebraska court held that where a 12-year-old boy had been left with the defendant for schooling and care, where the defendant had the boy's father's permission to take the boy on a vacation trip, and where the boy was injured during the trip, the boy was as a matter of law a "passenger" and not a "guest" under the Nebraska statute. It was held to have been error in instructing otherwise.

In Spring v. Liles, 1963, 236 Or. 140, 387 P.2d 578, plaintiff and defendant were co-employees and members of a

work crew under the direction of a third party. Plaintiff was injured while riding in defendant's car. Ore.Rev.Stat. § 30.110 precludes recovery for ordinary negligence where the occupant of the vehicle is a "guest without payment". This language is similar to that of the statute in the instant case which precludes recovery for ordinary negligence where the person who accepts the ride does so "without giving compensation therefor". In *Spring*, the Supreme Court of Oregon, in remanding the cause for a new trial after dismissing a judgment nonsuit against the plaintiff therein, said at page 583:

"It might be said that since defendant had no legal or moral obligation to transport plaintiff the granting of permission to ride was an act of 'hospitality.' On the other hand, looking at the transaction from plaintiff's standpoint it would seem reasonable to say that he rode with defendant not because the latter's hospitality was extended to him but because he was directed by Logsdon [the third party employer] to ride in defendant's car. He rode in defendant's car only because there was no room for him in Logsdon's station wagon. If plaintiff had been injured while riding in Logsdon's car, the relationship could certainly be considered nonsocial and, therefore, not within the statute. Plaintiff found himself in defendant's car as the result of the exigency of the moment. Plaintiff and defendant were thrown together because a problem arose incident to their common employment. We do not believe that this is the type of motivation bringing a driver and passenger together which characterizes the creation of the host-guest relationship. The jury would be warranted in finding that plaintiff was riding in defendant's car not as the recipient of defendant's hospitality, but as a co-employee forced by circumstances to ride in defendant's car to further a common interest in carrying out the job both were employed to perform."

The above-cited cases, some from Nebraska and some from other jurisdictions, uniformly support the instant result. Defendant Carman cites other cases, including Kolar v. Divis, 1966, 179 Neb. 756, 140 N.W.2d 658; Davis v. Landis Outboard Motor Co., supra; and Brown v. Killinger, Fla.App., 1962, 146 So.2d 124, in support of his position herein. The former two cases from Nebraska are in accord with the authorities previously cited herein as to general principles concerning the Nebraska guest statute. Under the facts of those cases cited by Carman, however, the guest statute was held to apply as a matter of law, which is contrary to the instant result. It is difficult to even attempt to reconcile the results of all the cases decided under the Nebraska guest statute since they all arise under somewhat different factual situations. No case is factually exactly in point with the instant case. We do feel, however, that under the existing Nebraska law and with no factual dispute herein, Judge Robinson did not err in holding the guest statute inapplicable. Admittedly the question may be close, but at the very least Judge Robinson arrived at a permissible conclusion regarding the law of Nebraska which may not be disturbed on appeal. See, e. g., Johnston v. Cartwright, 8 Cir., 1966, 355 F.2d 32, 38; Figge Auto Co. v. Taylor, 8 Cir., 1964, 325 F.2d 899, 901.

The facts of Brown v. Killinger, supra, distinguish that holding from the instant case. Therein the daughter-in-law of Mrs. Mildred Killinger, the defendant, had employed the plaintiff as a nurse with the understanding that plaintiff would be furnished transportation to and from her work. On the occasion when the accident there involved occurred, Mrs. Killinger was transporting plaintiff in Mrs. Killinger's automobile at the request of the daughter-in-law. Mrs. Killinger and the plaintiff were not co-employees and had no mutual business interest. The District Court of Appeal of Florida, First District, held in a split decision that the trial court properly sub-

mitted the question to the jury to determine whether or not plaintiff was a "guest" within the meaning of the Florida statute. We find the case of no support for defendant's theory herein.

 Defendant Carman claims as a separate matter that there was insufficient evidence in the record to justify the trial court's instruction to the jury stating, in effect, if they found by a preponderance of the evidence that Carman had defective vision from the arc welder's burn which impaired his ability to safely operate his automobile at the time of the accident, that Carman knew or with the exercise of due care should have known about the defective vision and its effect upon his ability to safely operate his automobile, and that his defective vision was a proximate cause of the accident in question, then they should find that Carman was negligent. In light of Dr. Shopp's testimony, set out supra, and other evidence presented on this subject, we think no error was committed in so instructing.

Defendant Carman urges additional errors, each of which has received consideration and no one of which will support a claim of prejudice. We have reviewed the trial court's lengthy instructions in detail. They were comprehensive, complete and accurate.

Affirmed.