Argued January 20, affirmed February 10, 1954

ROSA *v.* BRIGGS and LAFFERTY

266 P. 2d 427

*Howard K. Beebe,* of Portland, argued the cause for appellant. With him on the brief were Maguire, Shields, Morrison & Bailey, of Portland.

*Burl Green* argued the cause for respondent. On the brief were Green, Richardson & Green, and Dean N. Alexander, all of Portland.

TOOZE, J.

This is an action to recover damages for personal injuries allegedly caused by the negligent operation of two motor vehicles, brought by Arthur Rosa, as plaintiff, against Herbert G. Briggs and J. O. Lafferty, as defendants. The case was tried to a jury and resulted in a verdict being returned in favor of the defendant Lafferty against the plaintiff. A verdict also was returned in favor of plaintiff against the defendant Briggs for the sum of $4,000. Judgments were entered accordingly. Defendant Briggs appeals.

Defendant's sole assignment of error in this court is that the trial court erred in overruling his motion for a directed verdict, which motion was as follows:

"Defendant Briggs at this time moves the Court for a judgment directing a verdict in favor of Defendant Briggs on the ground and for the reason that there is no evidence to go to the jury on the question of a contract having been entered into between Briggs and Rosa for the transportation on this trip to take this case out of the guest statute."

Section 115-1001, OCLA (ORS 30.110), generally referred to as "the guest statute", provides:

"No person transported by the owner or operator of a motor vehicle as his guest *without payment for such transportation* shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator or caused by his gross negligence or intoxication or his reckless disregard of the rights of others." (Italics ours.)

The accident out of which this litigation arose occurred on August 13, 1948, at the intersection of S. W. Barbur boulevard and S. W. 19th avenue, in Multnomah county, Oregon. S. W. Barbur boulevard is an arterial four-lane highway, running in a general northerly and southerly direction, and is intersected by S. W. 19th avenue, which runs in a general easterly and westerly direction. Travel at the intersection is controlled to some extent by an electric yellow caution light.

The automobile in which plaintiff was riding at the time of the accident (in the back seat thereof) was owned and being operated by the defendant Briggs. This car was proceeding southerly along S. W. Barbur boulevard. The defendant Lafferty was operating his car in a general westerly direction upon and along S. W. 19th avenue, and was crossing the intersection with S. W. Barbur boulevard. The Briggs car struck the Lafferty car broadside, and, as the result of the collision, plaintiff suffered the personal injuries of which he complains.

Prior to the accident, both plaintiff and defendant Briggs were employed in the construction of a private

dwelling located near S. W. 58th avenue and Taylor's Ferry road, in Multnomah county. Plaintiff had been employed on the work for approximately three weeks, and defendant Briggs, for approximately one week. One Henry L. Rocco was foreman on the job and had employed Briggs. At the time of the accident, Rocco also was riding in the Briggs automobile, and in the front seat thereof. Briggs, Rocco, and plaintiff were on their way to work at the time of the accident.

At the time in question, plaintiff and Rocco lived at the Columbia hotel, located at S. W. Front avenue and S. W. Columbia street in Portland, Oregon; defendant Briggs lived at 2027 S. W. Second avenue (between S. W. Grant and S. W. Lincoln streets) in Portland.

On the morning of the accident, as well as for a few days prior thereto, the defendant Briggs drove his car from his home to the Columbia hotel for the purpose of transporting Rocco and plaintiff to their mutual place of employment. Over a period of six or seven days immediately prior to the day of the accident, defendant Briggs had been regularly transporting plaintiff and Rocco back and forth between the scene of their employment and the Columbia hotel each day they worked.

Prior to the commencement of this transportation, plaintiff and Briggs had been entire strangers, but Briggs had known Rocco over a period of a year. When Rocco employed Briggs on the job he asked Briggs if he might ride with him to and from work. Briggs consented. Thereupon, Rocco asked for similar transportation for plaintiff, to which Briggs agreed.

In order to furnish transportation for plaintiff and Rocco, it was necessary each morning for Briggs to drive approximately 12 city blocks north from his

home to the Columbia hotel and then to retrace his steps south and on to their place of employment. He was required to repeat the drive each evening upon returning to Portland. Therefore, this arrangement required Briggs to drive 48 blocks out of his way each day in order to provide the transportation in question.

Payday on the job was either on Monday or Tuesday, and on either Monday or Tuesday, August 9th or 10th, plaintiff was paid. At that time he had ridden four times with Briggs. He paid Briggs $2 in cash on that day, stating to Briggs that it was for "travel expense" or "transportation on the job". Briggs accepted the money. Thereafter, no change was made in the transportation arrangements, and prior to the accident, plaintiff had ridden with Briggs on one or two additional days—the only days he worked.

We have not attempted to review all the facts in the case, but the foregoing statement is sufficient for our purposes.

Plaintiff in his complaint alleged two causes of action against defendant Briggs. In one 'he charged Briggs with gross negligence within the meaning of the guest statute; in the other, he charged ordinary negligence.

The charge of ordinary negligence was based upon the theory and further allegations of the complaint that plaintiff was paying for his transportation and, hence, was not subject to the restrictions of the guest statute.

The trial court took from the jury's consideration the matter of gross negligence, upon the ground that there was insufficient evidence to submit that question. The trial court erred in this action, and were it necessary to reverse this case, we would be compelled

to remand it for a new trial upon the question of gross negligence.

However, the issue before us now for determination is whether there is sufficient substantial evidence in the record from which a jury might reasonably infer that there was an understanding between plaintiff and Briggs that plaintiff should pay for his transportation.

■ The motion for a directed verdict presents the question as to whether there is any substantial evidence to support the verdict and judgment. When the sufficiency of the evidence is thus challenged, the court must view the record in the light most favorable to the plaintiff. Moreover, plaintiff is entitled to the benefit of every reasonable inference that can be drawn from the evidence in his favor. *Glascock v. Anderson,* 198 Or 499, 257 P2d 617, 619; *Willoughby v. Driscoll,* 168 Or 187, 191, 120 P2d 768, 121 P2d 917.

■ Upon the trial defendant seemed to be of the opinion that unless plaintiff could prove an express agreement between himself and Briggs to pay for the transportation, an agreement made prior to the time the transportation commenced, he was not entitled to recover. This contention finds support in *Smith v. La-Flar,* 137 Or 230, 2 P2d 18, but that decision was expressly overruled in *Luebke v. Hawthorne et al.,* 183 Or 362, 367, 192 P2d 990. It also was impliedly overruled in *Albrecht v. Safeway Stores, Inc.,* 159 Or 331, 340, 80 P2d 62. In the Albrecht case, supra, at page 340, we said:

"* * * It is not necessary to prove a legal contractual obligation in order to remove plaintiff from the status of a guest."

Defendant invites attention to a number of decisions from other jurisdictions in which the broad prin-

ciple is laid down that where the evidence shows only a voluntary contribution to the host toward the expenses normally incurred in the operation of the automobile, that does not necessarily change the guest-host relationship, and especially so when the host has already commenced furnishing transportation gratuitously as a gesture of hospitality.

In *Rogers v. Vreeland,* 16 Cal App2d 364, 60 P2d 585, 587, cited by defendant, the court, in construing the guest statute, said:

"* * * * * * we are of the opinion that the section is applicable to a case such as the one now before us, where the riders, on a trip *purely social* [a trip to see wild flowers in the San Jaoquin Valley], *and without any commercial or business element,* agreed to pay their share of the running expenses of the automobile and their share of any other expense on the trip. We do not consider such an arrangement between the riders and the driver as the giving by the former to the latter of such compensation as removes the riders from the status of 'guests' within the meaning of the act." (Italics ours.)

Defendant in his brief also quotes from *Potter v. Juarez,* 189 Wash 476, 66 P2d 290, 292, the following:

"If one rides with a friend, or even with a stranger *upon his invitation, having no pre-existing understanding as to sharing the expense,* he is a guest only and will so remain even though he *gratuitously* offers some return favor such as paying for a meal, paying for gas, or providing the cigarettes. Such a return of favors *does not of itself* destroy the relation of host and guest." (Italics ours.)

Our own decisions in which we have construed the "guest statute" are not out of harmony with the above statements of the California and Washington

courts. We deem it unnecessary to discuss all the cases cited by defendant. When the facts in each of them are considered, there is little, if anything, said in the decisions that is contrary to the conclusions we reach in this case. In some instances, it was held to be a jury question whether or not the passenger was a "guest" within the meaning of the statute, while in others, the status of the plaintiff passenger was decided as a matter of law. In the latter type of cases, the relationship between the driver and passenger and the purposes of the transportation were usually social in nature. There is no fixed rule by which the question can be determined in every case. Each case must be decided upon its own peculiar facts and circumstances, guided only by certain elementary general rules upon which most courts agree. In addition to the two cases mentioned above, defendant cited and quoted from in some instances the following decisions: *McCann v. Hoffman,* 9 Cal2d 279, 62 P2d 401, 70 P2d 909; *Pilcher v. Erny,* 155 Kan 257, 124 P2d 461; *Everett v. Burg,* 301 Mich 734, 4 NW2d 63, 146 ALR 639; *Dutcher v. Rees,* 331 Mich 215, 49 NW2d 146; *Yarnall v. Gass,* 240 Mo App 451, 217 SW2d 283; *Voelkl v. Latin,* 58 Ohio App 245, 16 NE2d 519; *Hasbrook v. Wingate,* 152 Ohio St 50, 87 NE2d 87; *Eubanks v. Kielsmeier,* 171 Wash 484, 18 P2d 48.

In another Washington decision facts quite similar to those of the case at bar were considered: *Parrish v. Ash,* 32 Wash2d 637, 203 P2d 330, 338. The court said:

"It is for the jury to determine, from the evidence and upon proper instructions by the court, whether an amount paid, an article of property furnished, or a thing done was intended by the parties concerned as compensation for the transportation of a person by automobile, or whether

on the contrary the consideration or benefit was proffered and accepted merely as a gratuity or expression of appreciation for a favor extended.''

The court further stated:

"Under the evidence and the law as thus expounded, the jury could with propriety find, as it evidently did, that the payment of ten cents for the transportation on September 8th was made in a business sense, or as a part of a business transaction, not as an expression of courtesy or neighborliness, *and, further, that the transportation rendered on the following day was motivated by an expectation of a similar payment for the transportation on that day.*'' (Italics ours.)

And upon the question whether proof of an enforceable contract to pay for the transportation was a condition precedent to plaintiff's right of recovery as a passenger, the Washington court announced the same rule adopted by this court in *Albrecht v. Safeway Stores, Inc.,* supra. In discussing an instruction to the jury which, in effect, stated that such proof was not necessary, the Washington court said:

"Appellants assign error upon this instruction, contending that there must not only have been an *intention* on the part of the parties that the transportation was to be paid for, but also that there must have been an enforcible contract between the parties to that effect. The assignment of error is not well taken.

"It is true that the relationship of carrier and passenger may, and often does, arise out of contract. However, to avoid the bar of the host and guest statute it is not an essential element that there be an enforcible contract with respect to transportation.''

The court affirmed the judgment in favor of plaintiff.

In *Albrecht v. Safeway Stores, Inc.,* supra, at page 337, we said:

"\* \* \* As used in the statute, a 'guest' is one who accepts a ride in any motor vehicle without payment therefor, and for his own pleasure or business. He is the recipient of the hospitality of the owner or driver \* \* \*."

And in *Luebke v. Hawthorne et al.,* supra, at page 366, this court commented:

"Was Hawthorne inviting plaintiff to go as a matter of hospitality, or was it in furtherance of the business in which he was engaged? The answer is obvious.

"Defendant Hawthorne admitted that the sole purpose in 'going over there' was to effectuate a sale. Clearly it was a business transaction. Plaintiff was not going on this cold, rainy November day as a matter of sociability."

In *Melcher v. Adams,* 174 Or 75, 82, 146 P2d 354, Mr. Justice BAILEY, in discussing a decision of the Washington Supreme Court wherein the guest statute was construed, stated as follows:

"We are of the opinion that the foregoing construction of the term 'payment' as applied to guest statutes is correct and is supported by the great weight of authority. According to that construction, when the only relationship between the occupant and the owner or driver of the car is a social one, that of hospitality, companionship or the like, any incidental courtesy emanating from the one transported by the owner or driver is 'simply . . . an expression of appreciation that a guest often evinces': [Citing cases]. One riding in a motor vehicle at the invitation of the owner or operator 'does not become a passenger merely because he may perform some incidental voluntary service en route': [Citing California case]."

In the instant case the able and distinguished trial judge (since deceased), submitted to the jury the question whether, under all the facts and circumstances in evidence, plaintiff was paying for his transportation within the meaning of the guest statute. The court instructed the jury as follows:

"The nature of the payment contemplated by the statute may be as variable as the facts involved in the individual case. When the only relationship between the occupant and the owner or driver of the automobile is a social one, that of hospitality, companionship, or the like, then any incidental aid or courtesy emanating from the one transported by the owner or driver is simply an expression of appreciation that a guest often evinces.

"One riding in a motor vehicle at the invitation of the owner or operator does not become a paying passenger merely because he may perform some incidental voluntary service en route. On the other hand, a person who, in riding in the motor vehicle of another, confers or agrees to confer a substantial benefit upon the owner or operator of such vehicle, a benefit which is both tangible, direct, and material, becomes a paying passenger rather than a guest, even though the person so carried also promotes his own convenience and advantage by being so carried.

"* * * * *

"Now, payment is not to be considered in the strictest legal sense as an actual discharge in money of the sum due, or the actual transfer of money by the plaintiff to the defendant. If the plaintiff assumed a duty and a liability to make payment for his transportation, this would be equivalent to the actual transfer of money, so far as the statute is concerned.

"In order to establish payment under the statute, there must have been a contract between the plaintiff and Mr. Briggs—that is, a meeting of their two minds to the effect that the plaintiff was

not traveling as a courtesy guest, but as a paying passenger.

"The law is not concerned with the amount of the payment so long as it is of a substantial sum. To establish payment, the relation between the plaintiff and Mr. Briggs must have been one of business and not of neighborliness or simple friendship. Mr. Briggs must have been induced to give the ride by expectation of payment therefor. An actual transfer of a sum of money to cover expenses of the operator of a motor vehicle does not necessarily establish such a contract as would create a business relationship between the two parties rather than one of friendliness and courtesy. It is the existence of a contract or business agreement which is necessary to create the relationship of operator and passenger.

"A contract is a meeting of minds. It is an agreement. It may be entered into by an exchange of words or by actions or by conduct or by any two of them or all three of them together. In order to determine whether a contract was made, you must inquire into the actual intentions of the parties as demonstrated by their language or conduct, or both."

■ Under the facts and circumstances of this case, viewed in the light most favorable to plaintiff, we are of the opinion that the question of plaintiff's status was properly submitted as one of fact for the jury to determine. Its verdict resolved that question in favor of the plaintiff.

No social relationship existed between plaintiff and Briggs, and the transportation in question was not in any manner associated with a social, as distinguished from a business, venture. Defendant, a stranger, undertook to and did drive an extra 48 city blocks each day in order to furnish transportation for plaintiff and Rocco to and from their place of employment.

It is not altogether reasonable to suppose that Briggs would do this gratuitously for plaintiff, or as a mere favor to a person to whom he owed no obligation, social or otherwise. Under the facts of this case Rocco, the friend of Briggs, and also the foreman on the job who employed Briggs, occupied a somewhat different position than that of plaintiff, and yet, as the evidence indicates, on prior jobs when Rocco had ridden with Briggs, he had paid Briggs for his transportation. A jury might well find that the amount paid by plaintiff to Briggs was more than sufficient to cover the entire expense of gas and oil consumed on the trip each day, the round trip not exceeding 12 miles. Upon the first payday after this transportation commenced (to that time, plaintiff had ridden on four separate days), plaintiff paid defendant the sum of $2 for "traveling expenses" or "transportation on the job", and defendant accepted that sum therefor. From all the facts and circumstances in evidence, it is manifest that a jury might reasonably infer that an understanding existed between plaintiff and Briggs that plaintiff was to pay for his transportation at the rate of 50 cents per day, and that the transportation furnished on the days following the first payment by plaintiff (on payday), including the day of the accident, "was motivated by an expectation of a similar payment for the transportation" so provided, payment to be made therefor on the next payday.

The judgment is affirmed.