Argued May 5, reversed and remanded July 15, 1965

## SYLVIA *v.* HELFER
404 P. 2d 238

*Gene B. Conklin,* Pendleton, argued the cause for appellant. With him on the brief were Fulop, Gross & Saxon, Portland.

*Joe P. French,* Pendleton, argued the cause for respondent. On the brief were Currin & French, Pendleton.

Before McAllister, Chief Justice, and Perry, Sloan, O'Connell, Goodwin, Denecke and Holman, Justices.

HOLMAN, J.

This is an action for damages for personal injuries arising out of a one-car accident in which plaintiff was an occupant of a vehicle owned and operated by defendant's decedent Jesse Helfer, who was killed in the accident.

The proceedings in the trial court resulted in a verdict for plaintiff. Defendant filed a motion for judgment notwithstanding the verdict. The trial court granted the motion and dismissed plaintiff's complaint. The sole question upon appeal is whether there was sufficient evidence to make a jury question as to whether plaintiff was a paying passenger under the provisions of ORS 30.115(1) and thus was not a guest of Helfer. If a guest, he was prevented from bringing an action by the general provisions of the same statute, as no gross negligence was claimed.

Plaintiff and Helfer were neighbors in the city of Portland. Helfer invited the plaintiff to go elk hunting with him in eastern Oregon. They had never been hunting together and were not close friends. They occasionally conversed over the fence between their properties. Plaintiff was hesitant to go because of lack of funds, but finally accepted the invitation. The following is plaintiff's testimony of their conversation

relative to the sharing of the expenses that would be involved:

> "Q And where did you talk about this trip?
>
> "A In my home.
>
> "Q Did you contact Mr. Helfer, or did he contact you, sir?
>
> "A He came into my house and asked me if I could go, or if I would go.
>
> "Q Tell us a little bit about what transpired?
>
> "A He came over to my house and took to the back door, and he came in and we talked about hunting, and he asked me if I would like to go with him the next day. I told him I could not and because I was out of funds. He said, 'Well, that is all right. You can pay me the following Thursday,' which we agreed on.
>
> "Q Why were you going to pay him the following Thursday?
>
> "A Because that is my regular pay day."

Plaintiff's wife testified to the conversation as follows:

> "A Mr. Helfer came to the back door, and I can't rightfully remember whether my husband opened the door or whether I did and let him in; and he came in, and he asked my husband if he wanted to go hunting with him, and I thought, oh, no, not again. He had been gone three weeks, and we can't afford it. So, I immediately got very angry, and I was preparing to go to a club meeting that night, and I asked Bill not to go because we just couldn't afford it. They kept conversating, both of them, and I went ahead and prepared to leave; and in the conversation it was brought up, well, Mr. Helfer said, 'If you don't have the money this week, could you pay me your share on next Thursday,' and Bill said, 'Well, could we?' And I said, 'Well, please don't go. We probably could, but we can use the money better.' Well, he said,

'Then, if we can, we will go.' So, with that, I went ahead and got ready and I left.

\* \* \*

"A  Well, as I said, I can't remember whether Bill let him in or I did because I was busy because I had a club appointment; and he came, and of course I invited him in the front room.  But he came through the kitchen, and they sat down and he asked Bill to go hunting; and I said, 'Oh, no, not again.' I said, 'Bill, we just can't afford it.'

"Q  Now, at that time there was an invitation to hunt, is that correct?

"A  That is the way he stated it, yes.

"Q  Now, you brought up the matter of this expense?

"A  Well, as soon as I said we could not afford it, Mr. Helfer did.

"Q  Now, what did Mr. Helfer say?

"A  He says, 'Oh, to heck with the expenses.' He said, 'I will get everything, and you can pay me your share next Thursday on pay day.'

"Q  As a matter of fact, he said he would pay for everything, didn't he?

"A  And Bill could pay his share next Thursday."

Helfer's wife testified as follows:

"Q  What discussion did you hear by Mr. Sylvia and Mr. Helfer with regard to repayment of this expense?

"A  I didn't hear any discussion. I didn't know that there was. *He mentioned that he would wait.* I don't think I heard any discussion about the payment because my husband was going to pay for everything that I know of." (emphasis ours)

■ The case of *Kaufman v. Fisher,* 230 Or 626, 371 P2d 948 (1962), is about as close to being a "spotted

cow" case as one would expect to find. Fisher asked plaintiff to join him in a hunting trip. Plaintiff declined because he felt he could not afford it. Fisher proposed plaintiff take care of the horses to help pay the expenses. Plaintiff then accepted. Plaintiff rode with Fisher, and on a mountain road they ran over the edge of a cliff. Fisher was killed and plaintiff was injured. The court held there was sufficient evidence from which it could be found that plaintiff was not a guest. The court quoted from the case of *Johnson v. Kolovos,* 224 Or 266, 273, 355 P2d 1115 (1960), as follows:

> "Any bona fide prearrangement for sharing expense will take the occupant out of the guest category.   *   *   *"

Defendant urges that these case are no longer relevant because of the change in the guest statute by the 1961 legislature, Oregon Laws 1961, Chapter 578. There was added to the statute the following provision:

> " 'Payment' means a substantial benefit in a material or business sense conferred upon the owner or operator of the conveyance and which is a substantial motivating factor for the transportation, and it does not include a mere gratuity or social amenity." ORS 30.115(1)

■ In the case of *Johnson v. Kolovos,* supra, the court abandoned the rule that payment had to be a motivating factor in extending the transportation. The apparent principal purpose of the addition of subsection (1) to the statute was the rule's re-establishment. We do not see that this is of any help to defendant's position. There was adequate evidence, as indicated above, from which the jury could have found that plain-

tiff would not have been taken by Helfer had he not indicated he would pay his share of the expenses next pay day. Thus, there was evidence that the promise was a substantial motivating factor for the transportation. The principal subject of plaintiff's conversation with Helfer was if and when plaintiff would be able to pay.

■ Defendant contends that there was no payment to decedent by conferring a substantial benefit in a material or business sense as this was a social occasion with no business connected with it. The statute does not require that the parties be on business. The payment, or promise of payment, has to be only a substantial benefit in a material sense. We believe the sharing of expenses such as gasoline and food is a substantial material benefit to the other party and that if this is a substantial motivating factor for the furnishing of the transportation, the person so transported is not a guest but is being transported for payment, as contemplated by the statute.

In our opinion there was sufficient evidence from which the jury could find that plaintiff was being transported for payment and was therefore not a guest.

The order of the trial court entered a judgment in favor of defendant notwithstanding the verdict and dismissing plaintiff's complaint is reversed, and the case is remanded with instructions to enter a judgment for plaintiff on the jury's verdict.

GOODWIN, J., dissenting.

I dissent, for the reason that the legislature went to considerable pains to overrule *Johnson v. Kolovos,* 224 Or 266, 355 P2d 1115 (1960). The majority opinion seems to be putting back into the guest-passenger law

the idea that any bona fide prearrangement for sharing expenses will take the occupant out of the guest category. In view of the language of Oregon Laws 1961, ch 578, I am forced to conclude that an agreement by a hunting or fishing companion to help with the expenses of a trip is a social amenity within the meaning of the statute.