Argued June 8, reargued October 28, reversed and remanded
December 22, 1965

# GETCHELL *v.* REILLY

409 P. 2d 327

*Burl L. Green,* Portland, argued the cause for appellant. With him on the briefs were Green, Richardson, Green & Griswold, Portland.

*George Hibbard,* Oregon City, argued the cause for respondent. On the brief were Paul D. Schultz, and Hibbard, Jacobs, Caldwell & Kincart, Oregon City.

Before McAllister, Chief Justice, and Perry, Sloan, Goodwin, Denecke, Holman and Lusk, Justices.

GOODWIN, J.

Plaintiff, contending that he was not a guest passenger,[1] appeals a judgment for the defendant following an involuntary nonsuit.

On the night of March 2, 1963, plaintiff, defendant, and several other persons were together in a tavern near Newberg, Oregon. Plaintiff and defendant were close friends. All the persons in the group except plaintiff decided to go smelt fishing the following day. One Robert Renie agreed to let defendant use his

---

[1] ORS 30.115 "No person transported by the owner or operator of a motor vehicle * * * as his guest without payment for such transportation, shall have a cause of action for damages against the owner or operator for injury, death or loss, in case of accident, unless the accident was intentional on the part of the owner or operator or caused by his gross negligence or intoxication. As used in this section:

"(1) 'Payment' means a substantial benefit in a material or business sense conferred upon the owner or operator of the conveyance and which is a substantial motivating factor for the transportation, and it does not include a mere gratuity or social amenity.

"* * * * *."

smelt nets. Defendant asked Renie to go with him to get the nets, but Renie refused, saying that he was going to the beach. Renie suggested that defendant ask plaintiff, who knew where the nets were located, to accompany him. Defendant asked plaintiff to go with him to help locate the nets. The request was made several times before plaintiff consented. The only reason plaintiff consented to go was to help defendant. Plaintiff testified that he did not plan to go smelt fishing with defendant the following morning.

On the way to get the fishing gear, defendant lost control of his automobile and plaintiff received the injuries complained of in this action.

The question is whether, upon the foregoing facts, plaintiff was, as a matter of law, a "guest without payment" under ORS 30.115. If there was a jury question on this issue, the nonsuit was error.

It is conceded that the defendant driver received no payment under ORS 30.115 (1) for whatever transportation may have been involved in the transaction. It is argued that this fact, alone, constituted the plaintiff a guest.

A passenger who has not paid for transportation may be present in the vehicle for business or other nonsocial reasons. Such a person is not necessarily a guest. *Spring v. Liles,* 236 Or 140, 387 P2d 578 (1963); *Smith v. Pacific Truck Express,* 164 Or 318, 100 P2d 474 (1940).

The Restatement 2d, Torts, § 490, *Comment a,* defines a guest in a vehicle as one whom the owner or possessor of the vehicle invites to ride with him as a gratuity. Cases defining a guest under typical guest statutes may be found collected in the Annotation, 10 ALR2d 1352 (1950).

In *Spring v. Liles,* supra, we defined the host-

guest relationship as one having two characteristics: There must be no substantial benefit to the defendant (other than social), and transportation must be furnished by the host as a gesture of hospitality. 236 Or at 148.

■ As noted in 2 Harper and James, The Law of Torts 958 (1956), all agree that the occupant is a guest where he obtains the benefits of the ride and his presence confers none upon the host except the satisfactions of hospitality and social relationships. On the other hand, " 'Guest' should be defined so as to include only those who ride gratuitously in every substantial sense. It should exclude those who ride with the host for a common purpose (other than pleasure), or primarily as a favor to the host (though not in the way of business) * * *." [Footnotes omitted] Harper and James, The Law of Torts 961 (1956).

Any discussion in this state of the problem of the relationship where the occupant undertakes the ride at the driver's request and as a favor to him, in a nonbusiness context, should begin with *Albrecht v. Safeway Stores, Inc.*, 159 Or 331, 80 P2d 62 (1938). In the *Albrecht* case, the plaintiff's brother-in-law asked the plaintiff to accompany him from Baker to Burns on a business trip in which the plaintiff had no interest. The plaintiff at first declined the request. The plaintiff was asked by his sister and by her husband to go along to help with the driving and to help keep the defendant brother-in-law awake. The plaintiff finally consented. We held that the plaintiff was not a guest.

We followed the *Albrecht* decision in *Sheehan v. Apling*, 227 Or 594, 363 P2d 575 (1961), when the passenger's presence in the vehicle was similarly motivated by a desire to accommodate the driver. Sheehan

was donating his time and muscle to help Apling load and unload furniture. (While it was immaterial on the guest issue, Sheehan was also donating the use of his truck.) There we held in effect that because the plaintiff's presence in the truck was wholly for the benefit of the driver, the plaintiff was not a guest.

■ Where the facts admit of only one possible interpretation, as in *Spring v. Liles,* supra, there is no jury question. But where, as here, the evaluation of the facts leaves the issue in doubt, the jury should decide whether a given plaintiff was a guest. 2 Harper and James, The Law of Torts 961 (1956).

In the case at bar, the jury could have found that the plaintiff had gone "out of his way" to accommodate the defendant and was not a guest. While there was no direct evidence that any purpose of the plaintiff was being served, the jury likewise could have drawn an inference that plaintiff was continuing a social activity with his companion, and was a guest.

The language of *Ashland v. Pacific P. & L. Co.,* 239 Or 241, 395 P2d 420, 397 P2d 538 (1964), and *Tarbet v. Green,* 236 Or 361, 388 P2d 468 (1964), has been criticized by the plaintiff. The plaintiff urges that the last two cited cases are causing confusion and should be overruled. The defendant argues that if there is a conflict, *Spring v. Liles* should yield.

In *Tarbet v. Green,* a mother and daughter, traveling together upon an errand that was beneficial to the daughter and essentially social in nature, were held to be within the coverage of the statute as a matter of law. In *Tarbet,* we borrowed the "social amenities" exception from the definition of "payment" in order to define "guest." This borrowing may have been misleading. The result of the analysis there was to take

from the jury a question that should have been left to the jury. The case is overruled.

In *Ashland v. Pacific P. & L. Co.*, supra, defendant was visiting in the home of plaintiff. Defendant had never seen a sawmill. Plaintiff, as part of the entertainment, was taking defendant to see such a mill. They used defendant's vehicle. The court correctly held that plaintiff was a guest passenger. Under these circumstances, the purpose of the transportation was social entertainment. Thus, there was no issue for the jury.

A guest is a person who is riding in an automobile driven by another because of an extension of hospitality by the driver, or in furtherance of a mutually desirable social relationship.

■ In the case at bar, the question whether the plaintiff's presence in the defendant's automobile was motivated by a purpose to confer a benefit upon the defendant (other than social) or by a purpose to participate in mutually desirable social activities was for the jury to decide.

Reversed and remanded.

McALLISTER, C. J., specially concurring.

I concur in all of the opinion of the court except that portion thereof which overrules *Tarbet v. Green*, 236 Or 361, 388 P2d 468 (1964). It seems to me that a perfect example of the "furtherance of a mutually desirable social relationship" is a mother giving her maternal love, companionship and advice to help her daughter, as in *Tarbet*.