Argued January 7, affirmed February 10, 1971

# THE UNITED STATES NATIONAL BANK OF OREGON, Executor, *Appellant, v.* LOWELL D. NJUST, Administrator et al, *Respondents.*

480 P2d 420

*Sidney A. Brockley*, Oregon City, argued the cause for appellant. With him on the briefs were Jack, Goodwin & Anicker, Oregon City.

*Edward H. Warren*, Portland, argued the cause for respondent. With him on the brief were Hershiser, Mitchell & Warren, Portland.

TONGUE, J.

This is an action for damages for wrongful death against the driver of the automobile in which plaintiff's decedent was riding at the time of the accident causing her death. Plaintiff appeals from a judgment for defendant notwithstanding a jury verdict of $20,000 for plaintiff.

Plaintiff contends that the trial court erred in holding, as a matter of law, both (1) That plaintiff's decedent was a "guest," and (2) That defendant's decedent, the driver of the car, was not guilty of "gross negligence," both within the meaning of ORS 30.115.

Since both of the principal participants in this tragedy are dead, very little evidence was available, particularly upon the vital question whether plaintiff's

decedent was a "guest." Most of the testimony on that question came from a third passenger in the car at that time. Giving plaintiff the benefit of all of the evidence favorable to plaintiff's decedent, together with all of the favorable inferences which can reasonably be drawn from such evidence, as we must do in such a case, it appears that what occurred was substantially as follows.

Four elderly ladies went on a drive to a U-pick strawberry farm, where they picked berries, and in returning had an accident. The four included defendant's decedent, Mrs. Christiansen, who was the driver of the car; her housekeeper, Mrs. Groves; plaintiff's decedent, Mrs. Durschmidt, and another lady, Mrs. Tichenor.

These four ladies were "good friends" and as recently as the preceding Sunday had taken another drive together, which, without contradiction, was "a social type of trip." Prior to the day of the accident they had "talked about berries."

On that morning Mrs. Christiansen called Mrs. Tichenor to see if she "wanted to go that day." According to Mrs. Tichenor, there was to be "no pay for riding" and there were "no business arrangements between (her) and Mrs. Christiansen regarding going berry picking," but they were "just good friends going berry picking." Later in the day Mrs. Christiansen, Mrs. Groves and Mrs. Tichenor drove by the home of Mrs. Durschmidt to "see if Lillian wants to go."

Mrs. Durschmidt lived with her husband, a retired logger, on a small 13 acre farm, where they already had "near a years' supply" of berries "on hand." Because she and her husband had trouble with persons breaking in their home, one of them "was always

home." On that day her husband was away and she was at home when Mrs. Christiansen, Mrs. Groves and Mrs. Tichenor drove by and stopped to see her.

When they arrived, Mrs. Durschmidt "came out" to talk with Mrs. Christiansen, who asked her "if she wanted to ride along." Mrs. Durschmidt at first said that her husband was "not home," but after talking further said, "Well, I might as well go along, I quess." On the way to the berry farm she and Mrs. Christiansen "talked about some of their business," apparently involving the Grange, to which they both belonged.

Upon arriving at the berry farm all four ladies proceeded to pick berries. It was a hot afternoon and Mrs. Christiansen did not pick "all the time," but "went and sat in the car." Mrs. Tichenor picked a crate of berries by herself and paid for them. Mrs. Christiansen also paid for some undisclosed amount of berries, which were apparently picked partly by herself and partly by her housekeeper, Mrs. Groves, and by Mrs. Durschmidt, who purchased no berries.

█ The four ladies then returned from the berry farm on "Hog Back Road," which they had apparently traveled during their drive on the preceding Sunday, and which was apparently subject to the "basic rule," with an "indicated speed" of 55 miles per hour. Mrs. Christiansen, however, made at least one "wrong turn" and there was no evidence that she was familiar with that road.

On approaching what was described by an officer as a "blind intersection," with a stop sign, at a speed of between 35 and 40 miles per hour, Mrs. Christiansen failed to stop at the stop sign and was hit broadside by another car, killing both herself and Mrs. Durschmidt. There were no skid marks to indicate that she attempted to stop before the collision.

Up to that point, according to Mrs. Tichenor, there had been nothing that alarmed her about the driving of Mrs. Christiansen, whom she regarded to be a "good driver" and one who "never went over forty," at least on that occasion.

Under these facts it is clear that defendant's decedent, Mrs. Christiansen, was not guilty of gross negligence, although her conduct in going through the stop sign was a clear act of ordinary negligence. Cf. *Secanti v. Jones*, 223 Or 598, 612, 349 P2d 274, 355 P2d 601 (1960). The more difficult question is whether plaintiff's decedent, Mrs. Durschmidt, was a "guest without payment," within the meaning of ORS 30.115, so as to bar recovery in the absence of gross negligence.

The term "payment" is defined as follows in ORS 30.115 (1):

> " 'Payment' means *a substantial benefit in a material or business sense* conferred upon the owner or operator of the conveyance *and which is a substantial motivating factor* for the transportation, and it does not include a mere gratuity or social amenity." (Emphasis added)

■ Again, we have no hesitance in finding that the question whether the picking of berries by Mrs. Durschmidt for Mrs. Christiansen was "a substantial benefit" to her "in a material * * * sense" was properly a question of fact for the jury. Cf. *Reed v. Wilson*, 244 Or 388, 392, 418 P2d 501 (1966). This leaves for decision the question whether there was any substantial evidence to support a possible finding by the jury that the picking of such berries by Mrs. Durschmidt for Mrs. Christiansen was "a substantial motivating factor for the transportation."

There was no evidence to support a finding by the jury that when Mrs. Christiansen drove by Mrs.

Durschmidt's home to "see if Lillian wants to go" there was any discussion to the effect that Mrs. Christiansen wanted Mrs. Durschmidt to go along to pick some berries *for her*, or that either Mrs. Durschmidt or Mrs. Christiansen were "motivated" by any such purpose.

In our view, the fact that Mrs. Durschmidt *later* picked some berries for Mrs. Christiansen is not sufficient to support a finding that the picking of berries by her for Mrs. Christiansen was a "substantial motivating factor for the transportation" even though she may not have gone on the trip to pick any berries for herself, since she already had "a years' supply." This is because even if the motivation of Mrs. Durschmidt was more than a desire to go berry-picking with good friends, it is just as reasonable to infer that she was motivated by a desire to go along to pick berries for Mrs. Tichenor as it is to infer that either the intention or possibility that she pick berries for Mrs. Christiansen was "a substantial motivating factor" for the trip.

For the same reasons, it is equally, if not more reasonable, to infer that Mrs. Christiansen expected that Mrs. Groves, her housekeeper, would help her pick berries and that Mrs. Durschmidt would help Mrs. Tichenor pick berries, as it is to infer that she expected Mrs. Durschmidt to help pick berries for her or that this possibility was a "substantial motivating factor for the transportation" on her part.

Plaintiff is correct in contending that motivation can often be inferred from conduct, including conduct in the course of carrying out prior arrangements. *Sinclair v. Barker*, 236 Or 599, 604, 390 P2d 321 (1964). For all of these reasons, however, we must reject plaintiff's contention that a jury question was

presented whether Mrs. Durschmidt accompanied Mrs. Christiansen either to "accommodate" Mrs. Christiansen or to render some "service" to her and whether this was "a substantial motivating factor for the transportation."

In some cases the evidence is such that the jury can properly find that one inference is more probable than another, particularly where there is no evidence to support the unfavorable inference. See *Cowgill v. Boock*, 189 Or 282, 292, 218 P2d 445 (1950). This, however, is not such a case.

■ Plaintiff also contends that even if there was no "payment" for the transportation, Mrs. Durschmidt was not a "guest" for the further reason that she was "a passenger for purposes of the driver," Mrs. Christiansen, citing *Spring v. Liles*, 236 Or 140, 143, 387 P2d 578 (1963); and *Getchell v. Reilly*, 242 Or 263, 265-6, 409 P2d 327 (1965).

In *Spring v. Liles* this court, at p 148, quoted as follows from 2 Harper & James, Torts 961-2, § 16.15:

"'Guest' should be defined so as to include only those who ride gratuitously in every substantial sense. It should exclude those who ride with the host for a common purpose (other than pleasure) or primarily as a favor to the host (though not in the way of business)."

In *Spring v. Liles* this court also, at pp 147-8, construed ORS 30.110 (the predecessor to ORS 30.115) to mean that "two elements must co-exist to create the host-guest relationship":

"(1) There must be no substantial benefit to the defendant, and (2) The invitation extended to the plaintiff must be motivated predominantly by the defendant's spirit of hospitality."

To the same effect, see *Getchell v. Reilly*, 242 Or 263, 266, 409 P2d 327 (1965), overruling *Tarbet v. Green*, 236 Or 361, 388 P2d 468 (1964).

We also agree, however, with the following further statement from Harper & James, at p 959, § 16.15:

"* * * the occupant is not a guest where the purpose of the trip is to further mutual business interests of both host and occupant. Mutual convenience, however, in making a pleasure trip, or a trip which serves separate objectives on the part of the host and occupant, will not take the case out of the guest statute."

Thus, in *Spring v. Liles*, in which two employees rode to work together in a car belonging to one of them, this court held that the plaintiff was not a "guest," despite the fact that there was no "benefit" or "payment" to the host driver, because the trip was "for a common purpose other than pleasure," in that the trip was to further mutual business interests of both. Conversely, in *Guritz v. Foster*, 247 Or 550, 431 P2d 6 (1967), in which the plaintiff's decedent was on a trip with her host for the purpose of showing her a remote area in Douglas county, the trip was held to be "an extension of hospitality for the sole purpose of the furtherance of a mutually desirable social relationship," with the result that plaintiff's decedent was a guest, as a matter of law. There may, of course, also be cases such as *Getchell v. Reilly, supra,* at 268, in which there is sufficient evidence to make it a question of fact for the jury whether plaintiff's presence in defendant's car (in that case to show defendant where to find a fishing net) was "motivated by a desire to confer a benefit upon the defendant (other than social) or by a purpose to participate in mutually desirable social activities."

In this case, for reasons previously stated, there was no substantial evidence to support a finding that this ill-fated trip by Mrs. Durschmidt with Mrs. Christiansen was motivated by a desire to confer a favor or benefit upon the driver, other than social, so as to make Mrs. Durschmidt "a passenger for the purposes of the driver," Mrs. Christiansen. For the same reasons, there was no substantial evidence that the purpose of the trip was to further "mutual business interests," or that it was for "a common purpose other than pleasure" particularly since Mrs. Durschmidt already had a years' supply of berries and obviously did not make the trip to pick more berries for herself.

Indeed, the only reasonable inferences to be drawn from the evidence in this case are either (1) that the trip to pick berries was "an extension of hospitality for the sole purpose of furthering a mutually desirable social relationship," as in *Getchell v. Reilly*, or (2) that the trip was one which served "separate objectives of the part of the host and occupant," as in 2 Harper & James 959, for the reason that even if the trip was undertaken by Mrs. Christiansen for a business purpose (if the picking of berries can be so considered), it is obvious from the evidence that Mrs. Durschmidt had no such purpose.

For all of these reasons, the judgment of the trial court must be affirmed.