Argued October 27, affirmed November 28, 1975

FULLERTON, *Appellant, v.* WHITE, *Respondent.*

542 P2d 1017

*Dennis A. Hachler,* Pendleton, argued the cause and filed the brief for appellant.

*John H. Kottkamp,* of Kottkamp & O'Rourke, Pendleton, argued the cause and filed the brief for respondent.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, TONGUE, HOWELL and BRYSON, Justices.

TONGUE, J.

This is an action for personal injuries sustained by plaintiff while riding as a passenger in defendant's automobile. The case was tried before a jury. Plaintiff appeals from an adverse judgment. We affirm.

Plaintiff contends that the trial court erred in refusing to hold as a matter of law that plaintiff was not a "guest without payment" within the meaning of ORS 30.115 and in submitting that question to the jury.

Because payment for gasoline was provided for a trip not previously planned by defendant, but undertaken by her at plaintiff's request, this case presents questions never before directly decided by this court.

*The facts.*

On the night of July 23, 1973, plaintiff, then 19 years of age, was staying in an apartment in Portland with friends. Plaintiff, who had previously re-

sided in Pendleton, became frightened when one of her roommates was "freaking out" after taking drugs. She then called a friend in Pendleton, Arleigh Smith, and asked him to come and get her that night.

Mr. Smith said that he could not do so, but that he would try to get someone else to make the trip. He then left the telephone, went upstairs, and asked defendant if she would do so. There is some conflict in the testimony relating to his conversation with her.

According to Mr. Smith, when he first asked defendant to go to Portland to get plaintiff "she agreed to do so, without mentioning any money" and then he told her that if she didn't have any money he would give her $10 and that plaintiff would pay him back later. At some point in that conversation defendant said that she didn't have any money. Mr. Smith first testified that she made that statement after saying that she would go and before he said that he would pay her $10 on behalf of plaintiff. On cross-examination Smith testified that after defendant said that she would go Smith asked her if she would need any money. He also testified that he had only that one conversation with defendant; that he did not say "Here is $10 if you will go" and she did not make the $10 a "condition," but would not have been able to go otherwise because she needed money for gasoline to make the trip; that he then told plaintiff that the defendant would drive to Portland to get her and that he was "loaning" $10 to defendant which plaintiff would have to repay to him; that after this conversation with plaintiff he went back upstairs; that defendant was not there at that time and that he gave the $10 to another friend who was going to go with defendant on the trip.

The testimony of defendant relating to this conversation is also not entirely clear. At one point she testified that when Mr. Smith asked her if she would go "I said I would" and that he then went back to the telephone, apparently to tell plaintiff that defendant would drive to Portland to get her, and only then came back and said that he would give defendant money for gasoline. At another point she testified that on the first occasion when Smith came upstairs and asked her to go "I said I would and I guess we would more or less take care of it afterwards" and that "I told him I didn't have very much gas in the car and that was all that was said" until after Smith went back to the telephone and then came back later and offered to pay her $10 for gasoline.

Defendant also testified that although she didn't have any money with her at that time and could not have made the trip without $10 and had less than one quarter tank of gasoline, her "motive" and "sole reason for making the trip" was that plaintiff "needed a way home and I was the only one there with a car"; that she had not previously met plaintiff and did not make the trip "for the satisfaction of having some kind of social relationship with plaintiff," but that Mr. Smith had "done her favors"; she was "doing him a favor" and that "[t]urn abouts are fair play."

Another witness to the conversation between Smith and defendant, Bruce Knights, testified that when Mr. Smith first asked defendant if she would go "[s]he said she would, but she didn't have any gas money" and that Smith later gave $10 to Mr. Knights and "said it was for gas." On cross-examination, however, Mr. Knights said that it was he who

asked Smith for the $10 for gasoline and that defendant had previously agreed to go without insisting on payment of any kind.

Plaintiff, of course, was not a witness to the conversation between Smith and defendant, but testified that when Mr. Smith came back to the telephone to say that defendant (whom she did not know) would make the trip "he talked about money" and said that there would be a sum of money which she would have to pay him back, without saying how much and that she agreed to do so. On cross-examination, however, plaintiff testified that in the course of the telephone conversation Smith asked her to repay him the $10 that he had given to the "other people," presumably for gasoline. Plaintiff also testified that she then had some money in the bank and later did repay the $10 to Smith.

After these conversations between Smith and defendant and between Smith and plaintiff, the defendant and the other friends bought gasoline with part of the $10; drove to Portland to pick up plaintiff; bought more gasoline with the balance of the $10; and on the return trip to Pendleton that same night had the accident in which plaintiff was injured.

*Decision by other courts.*

This court has previously considered cases involving pre-arrangements for the sharing of expenses for trips by automobile in which the drivers invited the passengers to accompany them on trips previously planned by the drivers.[1] We have also considered cases involving pre-arrangements for trips which

---

[1] *Tarbet v. Green*, 236 Or 361, 388 P2d 468 (1964) (overruled in *Getchell v. Reilly*, 242 Or 263, 268, 409 P2d 327 (1965)); *Sylvia v. Helfer*, 241 Or 98, 404 P2d 238 (1965). See also *Kaufman v. Fisher*, 230 Or 626, 371 P2d 948 (1962), and *Johnson v. Kolovos*, 224 Or 266, 355 P2d 1115 (1960).

were planned by both driver and passenger for the joint benefit of both.[2] This is the first case, however, in which this court has been called upon to consider the legal effect of a pre-arrangement for contribution by a passenger to the expense of a trip undertaken solely at the request and for the accommodation of the passenger.[3]

Other courts which have considered such cases, under other statutes and other facts, have held either that such a passenger is a "guest without payment for transportation" as a matter of law, at least when the contribution by him to the expense of the trip is a small portion of the actual cost of the operation of an automobile for such a trip,[4] or that the question whether such a passenger is a "guest" is a question of fact to be submitted to a jury for decision.[5] No decisions by other courts have been called to our attention in which it has been held under similar facts that such a passenger is not a "guest" as a matter of law, as contended by the plaintiff in this case.

Although these decisions by other courts are of interest to us, the provisions of the Oregon "guest

[2] *Skow v. Shulps,* 224 Or 548, 356 P2d 521 (1960); *Gilmore v. Schiewe,* 237 Or 98, 390 P2d 624 (1964); *Reed v. Wilson,* 244 Or 388, 418 P2d 501 (1966).

[3] In *Smith v. Williams,* 180 Or 626, 178 P2d 710 (1947); *Reed v. Wilson,* 244 Or 388, 418 P2d 501 (1966); and *Michael v. Hill,* 262 Or 211, 497 P2d 662 (1972), it was not necessary to decide that question.

[4] *Birmelin v. Gist,* 162 Ohio St 98, 120 NE2d 711, 715-17 (1954); *Mears v. Kovacic,* 152 Colo 362, 381 P2d 991 (1963); *Berentsen v. Bellinghausen,* 403 SW2d 816, 817-20 (Tex Civ App 1966); *Gray v. Lauziere,* 354 Mass 683, 241 NE2d 825 (1968). See also Annot, 39 ALR3d 1224 (1971).

[5] *Hartman v. Wooley,* 66 Ohio L Abs 18, 115 NE2d 714, 715-16 (1951); *Smith v. Franklin,* 14 Utah 2d 16, 376 P2d 541 (1962); *Chabot v. Meredith,* 15 Cal App 3d 950, 93 Cal Rptr 543, 546-47 (1971). See also Annot, 39 ALR3d 1224 (1971).

statute," ORS 30.115, are somewhat different than the provisions of guest statutes in many other states and we are also controlled by the principles of law established by previous decisions of this court for general application in "guest-passenger" cases.

*Provisions of the Oregon guest statute.*

For some years prior to 1961 the Oregon "guest statute" provided that:

> "No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless the accident was intentional on the part of the owner or operator or caused by his gross negligence or intoxication or his reckless disregard of the rights of others."[6]

Under that statute, and in cases involving different facts, this court held that "any bona fide prearrangement for sharing expenses will take the occupant out of the guest category," and rejected as "confusing and too difficult to apply" the rule adopted in earlier cases to the effect that in considering whether such a passenger was a "guest without payment for such transportation" this court should consider whether such a payment was not only a "substantial benefit," but was a "substantial motivating factor for the transportation."[7]

[6] ORS 30.110, enacted in 1929 as Oregon Laws 1929, ch. 401.

[7] See *Johnson v. Kolovos,* 224 Or 266 at 272, 355 P2d 1115 (1960), overruling *Melcher v. Adams,* 174 Or 75, 82, 146 P2d 354 (1944). See also *Kaufman v. Fisher,* 230 Or 626, 371 P2d 948 (1962) (applying ORS 30.110).

The court had also previously held in *Albrecht v. Safeway Stores, Inc.,* 159 Or 331, 340, 80 P2d 62 (1938), that "It is not necessary to prove a legal contractual obligation." To the same effect, see *Steenson v. Robinson,* 236 Or 414, 423, 385 P2d 738, 389 P2d 27 (1964).

In 1961 the Oregon legislature, in effect, overruled those decisions of this court by the enactment of ORS 30.115,[8] in which the term "payment" is defined as follows:

"(1) 'Payment' means a substantial benefit in a material or business sense conferred upon the owner or operator of the conveyance and which is a substantial motivating factor for the transportation, and it does not include a mere gratuity or social amenity."

Since 1961 this court, in accord with the requirements of ORS 30.115(1) has held that "payment," for the purposes of that statute, must involve a "substantial benefit in a material or business sense conferred upon the owner or operator" and must be "a substantial motivating factor" for the transportation.[9] As previously noted, however, this is the first time that this court has had the occasion to consider the application of this rule in a case involving a contribution to the expenses of a trip by automobile undertaken solely at the request and for the accommodation of a passenger.

*Established rules of general application.*

In considering the application of the Oregon guest statute to this type of case, it is well to begin by bearing in mind some of the principles previously established by this court for general application in all cases arising under this statute.

---

[8] Oregon Laws 1961, ch 578, § 1. See *Sinclair v. Barker,* 236 Or 599, 603-04, 390 P2d 321 (1964).

[9] *Sinclair v. Barker, supra* n. 8; *Gunderson v. Barry,* 239 Or 279, 280, 397 P2d 196 (1964); *Sylvia v. Helfer,* 241 Or 98, at 103, 404 P2d 238 (1965); *Reed v. Wilson,* 244 Or 388, at 392, 418 P2d 501 (1966); *U.S. National Bank v. Njust,* 257 Or 563, 567, 480 P2d 420 (1971); *Michael v. Hill,* 262 Or 211, 214, 497 P2d 662 (1972).

See also *Hankins v. Bates,* 271 Or 676, 534 P2d 170 (1975).

■ First, we have held that the Oregon guest statute, being in derogation of the common law, is to be strictly construed and that the construction of the statute "should not be extended beyond the correction of evils in the attainment of the permissible social objects which, it may be assumed, were the inducing reasons for its enactment"[10] and that its application should be "carefully confined to those who clearly come within the first purpose of the rule."[11] This court has stated that purpose as follows:

> "* * * It was not considered just that one who accepts the kindness or hospitality of an automobile owner or operator, in extending an invitation to ride, should recover damages for personal injuries unless the same resulted from gross negligence, intoxication, or an intentional wrong."[12]

This court has held, quoting from 2 Harper and James, The Law of Torts 961 (1956), that:

> "* * * 'Guest' should be defined so as to include only those who ride gratuitously in every substantial sense. It should exclude those who ride with the host for a common purpose (other than pleasure), or primarily as a favor to the host (although not in the way of business), * * *."[13]

■ On the other hand, this court has said that "A

---

[10] *Kudrna v. Adamski,* 188 Or 396, 406, 216 P2d 262, 16 ALR2d 1297 (1950). To the same effect, see: *Willoughby v. Driscoll,* 168 Or 187, 197, 120 P2d 768, 121 P2d 917 (1942), overruled on other grounds; *Cook v. Michael,* 214 Or 513, 524, 330 P2d 1026 (1958); *Johnson v. Kolovos,* 224 Or 266, 270, 355 P2d 1115 (1960); *Senechal v. Bauman,* 232 Or 217, 223, 375 P2d 60 (1962); and *Getchell v. Reilly,* 242 Or 263, 265-66, 409 P2d 327 (1965).

[11] *Spring v. Liles,* 236 Or 140, 148, 387 P2d 578 (1963).

[12] *Albrecht v. Safeway Stores, Inc.,* 159 Or 331, 336, 80 P2d 62 (1938).

[13] *Getchell v. Reilly,* 242 Or 263, 265-66, 409 P2d 327 (1965).

guest passenger is ordinarily one who accepts a ride for his own accommodation."[14] This is in accord with the view as also stated in 2 Harper and James, *supra* at 958, as follows:

"* * * All agree that the occupant is a guest where he obtains the benefits of the ride and his presence confers none upon the host except the satisfactions of hospitality and social relationships. * * *"

This court has also recognized, however, that:

"There is no fixed rule by which the question can be determined in every case. Each case must be decided upon its own peculiar facts and circumstances, guided only by certain elementary general rules upon which most courts agree."[15]

■ The court has also held that the question whether a passenger is a "guest" within the meaning of the statute is a question of fact for the jury if the evidence is conflicting or if different inferences may be reasonably drawn from the evidence,[16] although it

[14] *Sheehan v. Apling,* 227 Or 594, 599, 363 P2d 575 (1961). See also *Kudrna v. Adamski,* 188 Or 396, 399, 216 P2d 262 (1950).

[15] *Rosa v. Briggs and Lafferty,* 200 Or 450, 457, 266 P2d 427 (1954).

[16] See *Getchell v. Reilly, supra* n. 13, at 267.
Cases in which this question has been held one of fact for the jury include: *Albrecht v. Safeway Stores, Inc., supra* n. 12; *Smith v. Pacific Truck Express,* 164 Or 318, 100 P2d 474 (1940); *Luebke v. Hawthorne et al,* 183 Or 362, 192 P2d 990 (1948); *Rosa v. Briggs and Lafferty, supra* n. 15; *Johnson v. Kolovos,* 224 Or 266, 355 P2d 1115 (1960); *Kaufman v. Fisher,* 230 Or 626, 371 P2d 948 (1962); *Spring v. Liles, supra* n. 11; *Sinclair v. Barker,* 236 Or 599, 605, 390 P2d 321 (1964); *Zwick v. Burdin,* 239 Or 629, 631, 399 P2d 362 (1965); *Reed v. Wilson,* 244 Or 388, 418 P2d 501 (1966); *Havlina v. Guaranty Chevrolet,* 265 Or 562, 509 P2d 415 (1973); *Ghafoor v. Taj,* 267 Or 205, 516 P2d 75 (1973); *Baker v. Stutzman,* 273 Or 530, 542 P2d 478 (1975).

may otherwise be decided by the court as a question of law.[10]

■ We have also held that the burden of proving that a passenger is not a guest, so as to be subject to the limitations of the statute, is on the plaintiff who brings an action for personal injuries against the owner or operator of an automobile.[11]

■ In addition, this court has held that the relationship between a guest passenger and the operator-owner of an automobile is a consensual relationship and that to be a "guest-passenger," subject to the limitations of the statute, the passenger must consent to accept that status.[12]

■ Finally, in *Spring v. Liles,* 236 Or 140, 147, 387 P2d 578 (1963), this court established the rule that to be such a "guest passenger" the following two elements must "co-exist":

"(1) [T]here must be no substantial benefit to the defendant, and

[10] Cases in which this question has been decided by the court as a matter of law include: *Melcher v. Adams,* 174 Or 75, 146 P2d 354 (1944); *Senechal v. Bauman,* 232 Or 217, 375 P2d 60 (1962); *Tarbet v. Green,* 236 Or 361, 388 P2d 468 (1964); *Gilmore v. Schiewe,* 237 Or 98, 390 P2d 624 (1964); *Ashland v. Pacific P. & L. Co.,* 239 Or 241, 249, 395 P2d 420, 397 P2d 538 (1964); *Guritz v. Foster,* 247 Or 550, 431 P2d 6 (1967); *U.S. National Bank v. Njust,* 257 Or 563, 480 P2d 420 (1971); *Quirk v. Ross,* 257 Or 80, 476 P2d 559 (1970); *Hankins v. Bates, supra* n. 9.

In the following cases plaintiff was held to be a passenger, rather than a guest, as a matter of law. *McBee v. Knight,* 233 Or 160, 377 P2d 163 (1962), and *Prosch v. Cater,* 252 Or 63, 448 P2d 380 (1968).

[11] *Sinclair v. Barker, supra* n. 8.

[12] *Spring v. Liles, supra* n. 11, at 144; and *Senechal v. Bauman,* 232 Or 217, 219-20, 375 P2d 60 (1962).

See also *Albrecht v. Safeway Stores, Inc., supra* n. 12, at 337; *Kudrna v. Adamski,* 188 Or 396, 399, 216 P2d 262 (1950). But see *Welker, Adm. v. Sorenson,* 209 Or 402, 306 P2d 737 (1957).

"(2) [T]he invitation extended to the plaintiff must be motivated predominantly by the defendant's spirit of hospitality."[20]

We shall now consider the application of these rules to the facts of this case and, in particular, the application of these two "co-exist[ing]" elements.

*The jury could have properly found that any "benefit" to defendant was not a "substantial motivating factor."*

In deciding whether there was a "substantial" benefit to the defendant under the facts of this case we must consider the requirements of ORS 30.115 that there must have been (1) a "substantial benefit in a material or business sense" conferred upon the defendant and (2) that the "benefit" must have been a "substantial motivating factor for the transportation."

It may be that in a case involving a trip initially undertaken by the owner or operator of an automobile for his own purposes payment by a later invited passenger for the gasoline required for a trip would constitute a "substantial benefit."[21] The same may also be true in a case involving a trip undertaken jointly by the owner-operator and the passenger for their joint purposes.[22]

As previously stated, however, this case involves a trip which was undertaken solely at the request of the passenger and for her accommodation and was

[20] To the same effect, see *Getchell v. Reilly, supra* n. 13, at 265; *U.S. National Bank v. Njust,* 257 Or 563, 569, 480 P2d 420 (1971); and *Havlina v. Guaranty Chevrolet,* 265 Or 562, 566, 509 P2d 415 (1973). See also *Zwick v. Burdin,* 239 Or 629, 632, 399 P2d 362 (1965); *Guritz v. Foster,* 247 Or 550, 431 P2d 6 (1967); *Baker v. Stutzman,* 273 Or 530, 542 P2d 478 (1975).

[21] See cases cited in n. 1, *supra.*

[22] See cases cited in n. 2, *supra.*

a trip which would not otherwise have been undertaken by the owner of the car—one of over 400 miles, and at night.

It may be contended on behalf of defendant that under the facts of this case the jury could reasonably consider the fact of common knowledge that the cost of operating an automobile today is in excess of 10 cents per mile; that the cost of gasoline is only a small portion of the total cost of operating an automobile; that the sum of $10 for a trip of over 400 miles would result in payment of 2.5 cents per mile; that at the end of the trip defendant's car would have been depreciated by wear, tear and general depreciation in an amount for which defendant received no compensation, wholly aside from the fact that she received no compensation or other "benefit" for undertaking this long and exhausting trip at night, with the result that the payment to her of $10 was no "substantial benefit" to her. Such a result would be in accord with the decisions by at least some other courts which have considered the question, although under somewhat different facts and statutory provisions.[29]

■ But even if the payment of $10 be considered to be a "substantial benefit" to defendant as a matter of law, we believe that the jury could nevertheless have properly found that in view of these same circumstances the payment of $10 was not a "substantial motivating factor for the transportation," as also specifically required by the terms of ORS 30.115(1). It is true that defendant admitted that she could not

---

[29] Cf. *Hartman v. Wooley*, 66 Ohio L Abs 18, 115 NE2d 714, 715-16 (1951); *Birmelin v. Gist*, 162 Ohio St 98, 120 NE2d 711, 715-17 (1954); *Smith v. Franklin*, 14 Utah 2d 16, 376 P2d 541 (1962); *Mears v. Kovacic*, 152 Colo 362, 381 P2d 991 (1963); *Gray v. Lauziere*, 354 Mass 683, 241 NE2d 825 (1968). See also Annot., 39 ALR3d 1224 (1971).

have made the trip without that money for gasoline. Nevertheless, we hold that the jury was entitled to believe her testimony that she agreed to go before any mention was made of payment for gasoline and that her sole reason and motive for agreeing to make the trip was to do a favor for her friend, Mr. Smith, in return for his previous favors to her.[29]

In our opinion, the jury could properly have found that although the $10 may have made it possible for defendant to make that long trip, it was not a "substantial motivating factor" which caused the defendant to say, "Yes, I'll go."

*The jury could also have properly found that the invitation extended to the plaintiff was "motivated predominantly" by defendant's "spirit of hospitality."*

If the jury believed that testimony by the de-

---

[29] Cf. *Mears v. Kovacic*, 152 Colo 362, 381 P2d 991 (1963); *Wharff v. McBride*, 183 NW2d 700. (Iowa 1971).

In so holding, we recognize, as held in *Sinclair v. Barker, supra* n. 8, at 604, that:

"* * * Certainly defendant's motivation will not be regarded as so subjective that his testimony disclaiming any expectation of benefit as described in the statute would foreclose the matter. His motivation may be derived from his conduct, verbal and otherwise, in the arrangements for transporting the plaintiff and in the course of carrying out such arrangements."

We also recognize, as further held in that case, at 605:

"* * * The jury could have decided that one of defendant's purposes in asking plaintiff to accompany him was for the aforementioned business purposes. Since the expectation of a business benefit need not be the *sole motivating* factor but only *a* motivating factor (if substantial) under the statute, the fact that the business purpose was combined with a social purpose would not preclude plaintiff from being classified as a paying passenger. We hold that there was sufficient evidence from which the jury could decide that plaintiff was a paying passenger. * * *" (Emphasis theirs).

fendant, as it was entitled to do, it could also properly find, in our opinion, that the invitation extended to the plaintiff was "motivated predominantly" by defendant's "spirit of hospitality."

The fact that plaintiff was a stranger to defendant and that she made the trip at the request of a third party does not require a different result, in our view, because we believe that the jury could properly find in this case that a motive of "hospitality" in extending a ride to a passenger who is a stranger may arise because of friendship between the driver and a third person.[28]

■ For these reasons, we hold that plaintiff did not establish this second "co-exist[ing]" element of the test set forth in *Spring v. Liles, supra,* as a matter of law and that this question was also properly submitted to the jury.

■ Finally, we consider plaintiff's contention that the guest-passenger relationship is "consensual" and that she did not consent to become a "guest." In holding that this relationship is "consensual" we have never intended to require that in accepting an invitation for a ride in an automobile a passenger must give express consent to becoming a "guest passenger" with knowledge of the resulting legal handicaps imposed by ORS 30.115. It is enough, in our judgment, that the passenger have knowledge of the basic facts relating to the arrangements for the transportation and have the capacity to decide whether to accept or reject the resulting transportation.[29]

[28] Cf. *Welker, Adm. v. Sorenson,* 209 Or 402, 306 P2d 737 (1957).

[29] Cf. *Albrecht v. Safeway Stores, Inc., supra* n. 12, at 337; *Kudrna v. Adamski,* 188 Or 396, 399, 216 P2d 262 (1950); *Senechal v. Bauman,* 232 Or 217, 219-20, 375 P2d 60 (1962).

In this case, plaintiff testified that she understood that she would be required to reimburse Mr. Smith for money advanced by him to the defendant, although she first denied that any specific sum of money was mentioned. On cross-examination, however, she said that Mr. Smith asked her to repay $10 that he had given to the "other people." The jury could properly find that she was the one who requested the transportation; that she knew, or had reason to know, that defendant would not otherwise have undertaken the long drive from Pendleton to Portland and back at night and that defendant did so because she was a friend of Mr. Smith and because he asked the defendant to make the trip to extricate the plaintiff from an experience that was frightening to her; that the amount to be paid by her would be substantially less than the actual cost of the transportation, and that she was old enough to understand what she was doing.

■ Under these facts we hold that plaintiff cannot deny the legal consequences of becoming a "guest" on the ground that she did not consent to undertake the status of a "guest."

For all of these reasons, we hold that the trial court did not err in denying plaintiff's motion to withdraw from the jury the question whether plaintiff was a "guest" for the purposes of ORS 30.115, and in submitting that question to the jury. The judgment of the trial court is affirmed.